In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1287

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CARLOS MAEZ,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:16-cr-00057-JD-MGG-1 — **Jon E. DeGuilio**, *Judge*.

SUBMITTED MARCH 31, 2020* — DECIDED JUNE 1, 2020

---

* This court granted the parties' joint motion to waive oral argument.
The case is therefore submitted on the briefs.

No. 19-1768

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MATTHEW R. JONES,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court for the
Central District of Illinois, Urbana Division.
No. 2:18-cr-20036-HAB-EIL-1 — **Harold A. Baker**, *Judge.*

————————————

No. 19-2049

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CAMERON BATTISTE,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cr-00220-2 — **Matthew F. Kennelly**, *Judge.*

————————————

ARGUED MARCH 31, 2020 — DECIDED JUNE 1, 2020

————————————

Before WOOD, *Chief Judge*, and KANNE and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. In separate cases, juries found appellants Carlos Maez, Matthew Jones, and Cameron Battiste guilty of violating 18 U.S.C. § 922(g), which prohibits convicted felons and several other classes of people from possessing firearms or ammunition. In their appeals, the three defendants raise overlapping issues relying on *Rehaif v. United States*, 139 S. Ct. 2191 (2019), to challenge their convictions in trials held before *Rehaif* was decided. Before *Rehaif*, the federal courts of appeals had all held that § 922(g) required the government to prove a defendant knowingly possessed a firearm or ammunition, but not that the defendant knew he or she belonged to one of the prohibited classes. *United States v. Williams*, 946 F.3d 968, 970 (7th Cir. 2020). In *Rehaif*, the Supreme Court reached a different conclusion, holding that the statute requires the government to "show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." 139 S. Ct. at 2194.

Courts across the nation are grappling with how *Rehaif* affects cases pending on direct appeal when it came down. This court has already affirmed several pre-*Rehaif* convictions based on guilty pleas, but this is our first precedential decision concerning convictions upon jury verdicts. See *United States v. Ballard*, 950 F.3d 434, 436 n.1 (7th Cir. 2020); *United States v. Dowthard*, 948 F.3d 814, 818 (7th Cir. 2020); *Williams*, 946 F.3d at 975. The three appellants assert types of error that we have not yet addressed in light of *Rehaif*: a missing element in their indictments and jury instructions and—in Jones's case—a denied motion for a judgment of acquittal. Applying plain-error review, we conclude that the asserted errors do not require reversing any of the convictions. We vacate Jones's sentence, however. As the government acknowledges, the district court made what is known as a *Tapia* error, imposing a longer

prison term for purposes of rehabilitation through prison pro-
grams. See *Tapia v. United States*, 564 U.S. 319, 334 (2011).

I.   *Factual and Procedural Background*

Carlos Maez robbed a bank at gunpoint in South Bend, In-
diana, on October 16, 2015. Police found firearms and ammu-
nition in Matthew Jones's bedroom when executing a search
warrant for his home in Kankakee, Illinois, on July 15, 2018.
And when federal agents arrested Cameron Battiste and his
girlfriend outside their apartment complex in Willowbrook,
Illinois, on April 7, 2017, his girlfriend was carrying a laundry
bag that contained two firearms. Each defendant stipulated at
his trial that prior to the charged possession of a firearm, he
had been convicted of a crime punishable by imprisonment
for a term exceeding one year. Juries found each defendant
guilty on one count of violating 18 U.S.C. § 922(g)(1), and each
was sentenced under § 924(a)(2).[1]

On appeal, the defendants argue that *Rehaif v. United
States*, 139 S. Ct. 2191, requires reversal of their § 922(g) con-
victions. All three defendants argue that their indictments
were defective because they failed to allege that they knew of
their felon status. All three argue that the jury instructions er-
roneously omitted this same element of knowledge. None of
the defendants objected to the indictment or jury instructions
in the district courts, on any grounds. Jones did, however,
move for a judgment of acquittal at the close of evidence. See
Fed. R. Crim. P. 29(a). He gave no specific grounds to support
his oral motion, and the district court denied it without asking

---

[1] Maez was also convicted of one count of armed bank robbery and
one count of using or carrying a firearm in relation to a crime of violence.
See 18 U.S.C. §§ 2113(d), 924(c). He does not challenge those convictions.

for elaboration. Jones argues that this denial was also a *Rehaif* error because the trial evidence was insufficient to show that he knew he was a felon.[2]

II. *Legal Framework*

We first address the common legal issues raised by these jury verdicts before *Rehaif* was decided. Current law governs our review on direct appeal, including any issues reviewed for plain error. See *Henderson v. United States*, 568 U.S. 266, 276–77 (2013). This principle applies with full force where an intervening decision has effectively added an element to a crime. See *Johnson v. United States*, 520 U.S. 461, 467–68 (1997) (giving retroactive effect to *United States v. Gaudin*, 515 U.S. 506 (1995), which required the jury to find materiality in perjury prosecutions); *United States v. Ross*, 77 F.3d 1525, 1539 (7th Cir. 1996) (same). Several questions arise concerning our review of jury verdicts rendered before *Rehaif* was issued.

A. *Scope of Knowledge Required by Rehaif*

Jones and Battiste raise a threshold question concerning the scope of the Supreme Court's holding in *Rehaif*. The Court held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. Does this language require only that defendants know *their status*—in these cases, having a felony conviction? Or, construing the decision more

---

[2] Battiste moved for a judgment of acquittal in the district court as well, but his written motion specifically targeted the government's case that he possessed the firearms. On appeal, he does not challenge the denial of that motion.

broadly, must defendants know *that it was a crime to possess a firearm* as a result of their prohibited status? Jones and Battiste press the broader interpretation. In effect, they argue that § 922(g), as interpreted in *Rehaif*, prohibits only criminally *willful* possession of firearms and ammunition—possession with knowledge that the law makes the possession a crime. See *Bryan v. United States*, 524 U.S. 184, 191–92 (1998) ("As a general matter, when used in the criminal context, … in order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'"), quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994).

We do not read *Rehaif* as imposing a willfulness requirement on § 922(g) prosecutions. First, the difference between requiring knowledge of status and knowledge of the criminal prohibition is so important in the practical workings of federal courts that the Supreme Court would not have adopted the broader reading without saying so with unmistakable clarity. More fundamental, the logic of the Court's opinion supports only the narrower requirement of knowledge of status. The textual analysis centered on Congress's use of the word "knowingly" in § 924(a)(2), which spells out the punishment for violations of § 922(g). 139 S. Ct. at 2195. This fact alone casts serious doubt on Jones and Battiste's reading because, in criminal law, "knowing" connotes a lower level of scienter than does "willful." In *Bryan*, the Court collected cases holding that defendants could be convicted of "knowing" crimes without proof that they knew their deliberate actions violated the law. 524 U.S. at 192–93. *Rehaif* fits easily into that line of cases interpreting "knowing" requirements.

*Rehaif* changed governing law in holding that "knowingly" in § 924(a)(2) applies not only to the "possession element" of § 922(g) but also to its "status element." 139 S. Ct. at 2195–96. In other words, both elements require the same knowledge, an awareness of the fact. See Model Penal Code § 2.02(2)(b)(i) (Am. Law Inst. 1985). Before *Rehaif,* we consistently held that the government needed to prove that § 922(g) defendants knew only that they possessed firearms or ammunition, not that they knew their status or that their possession was unlawful. See, e.g., *United States v. Stein*, 712 F.3d 1038, 1041 (7th Cir. 2013) ("[T]he word 'knowingly' made applicable to § 922(g) by § 924(a)(2) requires knowledge of the factual elements of the offense and nothing more."); *United States v. Wilson*, 159 F.3d 280, 289 (7th Cir. 1998) ("[T]he fact that [the defendant] did not know about the statute does not mean that he could not have committed a 'knowing' violation of it."). *Rehaif* did not overturn such holdings with respect to the possession element; it applied the same knowledge requirement to the status element.

Next, *Rehaif*'s discussion of "the well-known maxim that 'ignorance of the law' (or a 'mistake of law') is no excuse" makes doubly clear that § 922(g) requires knowledge only of status, not knowledge of the § 922(g) prohibition itself. As the Court explained, the maxim means that a defendant normally cannot argue that he was "unaware of the existence of a statute proscribing his conduct." 139 S. Ct. at 2198, quoting 1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 5.1(a), at 575 (1986). But ignorance as to a "collateral matter," even if that matter happens to be a legal fact, can "negat[e] an element of the offense." *Id.* The Court concluded that a "defendant's status" under one of the provisions of § 922(g) is a "'collateral' question of law," so the "ignorance"

maxim does not apply. *Id.* The fact that § 922(g)(1) exists and prohibits certain conduct is not collateral, though. It is the prohibition itself. Because § 924(a)(2) does not require willfulness, ignorance of the statutory prohibition itself is not a defense.[3]

B. *Standards of Review*

We next identify the standard of review for each type of error argued in these three appeals: a defective indictment, an element omitted from jury instructions, and a denied Rule 29 motion. Although it is tempting to lump these *Rehaif* errors together, each has distinctive features we must consider.

1. *Incomplete Jury Instructions*

None of these defendants asked to have the jury instructed that the government was required to prove that, at the time he possessed the firearm, he knew that he had previously been convicted of a felony. Failing to raise an objection to the jury instructions before deliberations start "precludes appellate review, except as permitted under Rule 52(b)." Fed. R. Crim. P. 30(d). Rule 52(b) in turn allows for "plain-error" review: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." We review for plain error even if the objection would

---

[3] The dissenting Justices in *Rehaif* also read the majority opinion this way. According to the dissent, no one, including Rehaif, argued for willfulness because "the pointed use of the term 'knowingly,' as opposed to 'willfully,' in § 922(g), provides a ground to infer that Congress did not mean to require knowledge of illegality." 139 S. Ct. at 2205 (Alito, J., dissenting). Instead, the majority "require[d] knowledge of both the conduct and status elements of the offense." *Id.* The majority did not object to this description of its holding.

have lacked merit at the time of trial, before an intervening change in the law. See *Johnson*, 520 U.S. at 464–66 (applying plain-error review to jury instructions rendered incomplete by a decision issued after conviction).

Plain-error review under Rule 52(b) has four elements: "[B]efore an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Johnson*, 520 U.S. at 466–67, quoting *Olano v. United States*, 507 U.S. 725, 732 (1993); see also *United States v. Caira*, 737 F.3d 455, 462–63 (7th Cir. 2013) (applying *Olano* test to forfeited objections to jury instructions).

### 2. *Defective Indictments*

None of these defendants objected to any defect in his indictment before trial, as required by Rule 12(b)(3)(B)(v). In Jones and Battiste's cases, the government argues that these failures waived any challenge to their indictments on appeal. As we recently made clear in *United States v. Muresanu*, indictment defects are never jurisdictional so they may be waived if not properly presented. 951 F.3d 833, 837–39 (7th Cir. 2020), citing *United States v. Cotton*, 535 U.S. 625, 631 (2002). The defendants here invoke Rule 12(c)(3), which allows a district court to consider untimely challenges to an indictment "if the party shows good cause." We have interpreted this provision to permit new arguments on appeal as well, provided that "the district court would have abused its discretion if it had concluded that [the defendant] lacked good cause." *United States v. Thomas*, 897 F.3d 807, 815 (7th Cir. 2018); see also

*United States v. Lockett*, 859 F.3d 425, 428 (7th Cir. 2017) (same).[4]

An intervening legal decision that overturns settled law amounts to good cause for this purpose. The government has conceded as much in Maez's appeal. In *Thomas*, we explained that the Supreme Court's intervening decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), was *not* good cause for failing to move to suppress evidence because it resolved a circuit split on a "high-profile issue," so the defendant should have presented his argument to the district court. 897 F.3d at 815. In contrast, *Rehaif* went counter to the settled views of every federal court of appeals on an issue affecting thousands of felon-in-possession prosecutions every year. See 139 S. Ct. at 2210 (Alito, J., dissenting). If *Rehaif* had come down while these cases remained in the district courts, it would have been an abuse of discretion for a judge to refuse to consider an untimely challenge to the indictment based on *Rehaif*.

Although the intervening decision in *Rehaif* establishes good cause to avoid waiver, the issue was still not preserved in these cases, so we again review the indictments for plain error. See *United States v. Grayson Enterprises, Inc.*, 950 F.3d 386, 403 (7th Cir. 2020) (showing of good cause under Rule 12(c)(3) gives rise to plain-error review). An alleged indictment error is "plain," satisfying the first two prongs of the *Olano* test, only if the indictment "is so obviously defective as not to charge the offense by any reasonable construction."

---

[4] The situation is different for a defendant who pleads guilty and waives "any argument that could have been raised in a pretrial motion." *United States v. Wheeler*, 857 F.3d 742, 744 (7th Cir. 2017). The good-cause proviso thus will usually help only defendants who went to trial.

*United States v. Frank Smith*, 223 F.3d 554, 571 (7th Cir. 2000); see also *Grayson Enterprises*, 950 F.3d at 402 (same).[5]

One of the defendants' principal arguments on appeal is that the omission of an element from the indictment is a "structural error" that, they argue, always requires reversal. As an initial matter, a finding of structural error would definitively resolve only the third prong of the *Olano* plain-error test, the effect on substantial rights. The Supreme Court has "noted the possibility that certain errors, termed 'structural errors,' might 'affec[t] substantial rights' regardless of their actual impact on an appellant's trial." *United States v. Marcus*, 560 U.S. 258, 263 (2010); see also *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991) ("structural defects in the constitution of the trial mechanism … defy analysis by 'harmless-error' standards"). The Court has repeatedly assumed without deciding that such structural errors "automatically satisfy the *third prong* of the plain-error test." *Puckett v. United States*, 556 U.S. 129, 140 (2009) (emphasis added); see also *Cotton*, 535 U.S. at 632; *Johnson*, 520 U.S. at 468–69; *Olano*, 507 U.S. at 735. We have done the same. See *United States v. Anderson*, 881 F.3d 568, 573 (7th Cir. 2018) ("[T]here is a question as to whether the third prong of the plain error test is met automatically in cases of structural error."); see also *United States v. Gary*, 954 F.3d 194, 205 (4th Cir. 2020) ("[I]f an error is determined to be structural, the third prong of *Olano* is satisfied."). Even structural errors remain subject to the fourth and discretionary prong of the plain-error test.

---

[5] We cite two different cases where the defendant's last name was Smith, so we have included first names in the relevant citations.

Still, a structural error would go a long way toward rever-
sal of these convictions, so we address the argument.
"'[S]tructural errors' are 'a very limited class' of errors that
affect the 'framework within which the trial proceeds.'" *Mar-
cus*, 560 U.S. at 263, quoting *Johnson*, 520 U.S. at 468. The Su-
preme Court has identified, in total, about a dozen forms of
structural error, depending on how one counts. See 7 Wayne
R. LaFave et al., Criminal Procedure § 27.6(d) (4th ed. 2019).
Signal examples include the total deprivation of counsel, the
lack of an impartial trial judge, a violation of the right to a
public trial, and an erroneous reasonable-doubt instruction.
*Marcus*, 560 U.S. at 263. That is not to say that previously un-
recognized forms of structural error cannot be newly identi-
fied. In *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017), the
Court listed three different qualities that can render an error
structural: (1) "the right at issue is not designed to protect the
defendant from erroneous conviction but instead protects
some other interest;" (2) "the effects of the error are simply
too hard to measure;" or (3) "the error always results in fun-
damental unfairness." *Id.* at 1908. The defendants here argue
that "an indictment that omits an essential element" satisfies
the second and third criteria.

In *Cotton*, the Supreme Court expressly reserved the ques-
tion whether indictment errors are structural. See 535 U.S. at
632–33. Binding precedent in this circuit holds that they are
not. In *United States v. Nance*, 236 F.3d 820 (7th Cir. 2000), we
reviewed a drug conviction after the Supreme Court decided
*Apprendi v. New Jersey*, which required "any fact that increases
the penalty for a crime beyond the prescribed statutory max-
imum" to be charged in an indictment and proved to a jury.
530 U.S. 466, 490 (2000). Reviewing for plain error in *Nance*,

we agreed with the defendant that his indictment was defective in light of *Apprendi*. 236 F.3d at 825. We then asked whether this was "a structural error so fundamental that it cannot be left unremedied," the same argument defendants make here. We concluded the error was not structural because an incomplete indictment was analogous to an error in the jury instructions. *Id*. We have also held in numerous cases that prejudice is required to reverse based on a *preserved* challenge to the indictment. See, e.g., *United States v. Vaughn*, 722 F.3d 918, 925 (7th Cir. 2013); *United States v. Dooley*, 578 F.3d 582, 590 (7th Cir. 2009); *United States v. Webster*, 125 F.3d 1024, 1029 (7th Cir. 1997). By definition, though, a structural error does not require a showing of prejudice. See *Fulminante*, 499 U.S. at 309. The defendants do not attempt to distinguish these cases.

In effect, the defendants tacitly ask us to overrule multiple prior decisions based on the criteria identified in *Weaver*, 137 S. Ct. at 1908. We decline to do so. First, the defendants mount no argument that the grand jury right "is not designed to protect the defendant," and we can imagine none. Second, the effect of an indictment error is not "too hard to measure." The potential effect depends on context, of course, but often turns on whether there is doubt that the defendant was put on notice of the nature of the charges. See, e.g., *Dooley*, 578 F.3d at 590 ("It is clear from the record that Mr. Dooley and his counsel understood the Government's allegations and were able to mount a vigorous, albeit unsuccessful, defense at trial."). Third, not every indictment error "results in fundamental unfairness." Some may, but others raise no serious questions about the integrity of the criminal process. See *Russell v. United States*, 369 U.S. 749, 763 (1962) (praising the "salutary development in the criminal law" that "[c]onvictions are no longer reversed because of minor and technical deficiencies

[in the indictment] which did not prejudice the accused"). Defendants who have suffered an effect on their substantial rights because of indictment error can still obtain relief under existing law.

### 3. *Denied Rule 29 Motion*

Jones moved for judgment of acquittal under Rule 29 in the district court. His motion was general. He asserted only that "the Government has not presented sufficient evidence to prove their case beyond a reasonable doubt." Without asking Jones to elaborate, the district court denied the motion, which was clearly the correct decision under then-governing circuit precedent.

This short exchange preserved all possible challenges to the sufficiency of the evidence, including the post-*Rehaif* argument that the government failed to prove that Jones knew his felony status. A motion under Rule 29 that makes specific arguments waives issues not presented, but a general motion preserves every objection. "Although a motion for judgment of acquittal need not spell out the particular basis for the challenge to the sufficiency of the evidence, when such a motion raises specific arguments, any claims not presented in the motion are waived." *United States v. Jones*, 763 F.3d 777, 811–12 (7th Cir. 2014), vacated on other grounds in *United States v. Drake*, 774 F.3d 1104 (7th Cir. 2014), quoting *United States v. Moore*, 363 F.3d 631, 637 (7th Cir. 2004); see also *United States v. Hammoude*, 51 F.3d 288, 291 (D.C. Cir. 1995) ("Hammoude's second motion for acquittal was broadly stated, without specific grounds, and was therefore sufficient to preserve the full range of challenges, whether stated or unstated, to the sufficiency of the evidence."). Cf. *United States v. Huntsberry*, 956 F.3d 270, 282–83 (5th Cir. 2020) (reviewing for plain error a

denied Rule 29 motion after *Rehaif* where original motion argued for acquittal on a different basis).[6]

We therefore apply de novo review to Jones's preserved challenge to the sufficiency of the evidence in light of *Rehaif*. We ask "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hernandez*, 952 F.3d 856, 859 (7th Cir. 2020).

C.  *Record for Plain-Error Review*

A final question raised by these appeals from jury verdicts is the scope of the record we review for plain error. Must errors in the jury instructions and indictments be evaluated solely against the trial record of evidence heard by the jury, or may we also consider information revealed at sentencing? The answer has important consequences for pending appeals after *Rehaif*. Nearly all felon-in-possession defendants who go to trial, including all three defendants here, stipulate to the fact of a prior conviction. Pursuant to *Old Chief v. United States*, 519 U.S. 172 (1997), that stipulation has barred the government from offering more detailed evidence of their criminal

---

[6] This rule follows from the fact that parties to a criminal case—unlike civil parties—have no general obligation to support these motions with specific reasons. See Fed. R. Crim. P. 47 advisory committee's note to 1944 adoption ("This rule is substantially the same as the corresponding civil rule, except that it authorizes the court to permit motions to be made orally and does not require that the grounds upon which a motion is made shall be stated 'with particularity,' as is the case with the civil rule." (citation omitted)); see also Peter J. Henning & Sarah N. Welling, 2A Federal Practice and Procedure: Criminal § 466 (4th ed. 2019) ("Specificity is not required by Rule 29 or by Rule 47.").

histories. (In the wake of *Rehaif*, defendants and the government have begun agreeing to modified *Old Chief* stipulations that also include knowledge of felon status. See, e.g., *United States v. Price*, No. 1:18-cr-00348-JMS-MPB-1, 2020 WL 2113410, at *3 (S.D. Ind. May 4, 2020); *United States v. Garcia*, No. 16-cr-00109-1, 2020 WL 1663127, at *8 (N.D. Ill. Apr. 3, 2020).) But trial records in cases tried before *Rehaif* was issued are likely to disclose little regarding defendants' knowledge of felon status, due in part to the *Old Chief* bar. The appropriate record on plain-error review is important, and the courts of appeals have taken different approaches to this issue after *Rehaif*.

As an initial matter, it is well established that, to review alleged errors in *guilty plea proceedings*, appellate courts consider the entire record, not just the transcript of the plea hearing: "in assessing the effect of Rule 11 error, a reviewing court must look to the entire record, not to the plea proceedings alone." *United States v. Dominguez Benitez*, 542 U.S. 74, 80 (2004), citing *United States v. Vonn*, 535 U.S. 55, 74–75 (2002). We have applied this approach to *Rehaif* claims. E.g., *United States v. Williams*, 946 F.3d 968, 974 (7th Cir. 2020) (consulting entire district court record to assess effect of *Rehaif* error in plea colloquy). But *Vonn* relied on an advisory committee note to Rule 11 for this holding. See 535 U.S. at 74. The same logic does not apply to trial errors. To win reversal of a guilty plea on plain-error review, a defendant "must show a reasonable probability that, but for the error, he would not have entered the plea." *Dominguez Benitez*, 542 U.S. at 83. This "cost-benefit analysis" of the defendant's options, *United States v. Coleman*, 806 F.3d 941, 945 (7th Cir. 2015), would be impossible based on a plea-hearing transcript alone.

The circuits have taken different approaches to the record for plain-error review of *jury verdicts* in light of *Rehaif*. Four circuits have freely consulted materials not before the jury—in particular, criminal histories from defendants' presentence investigation reports (PSRs)—without discussing the propriety of thus expanding the record. See *United States v. Ward*, 957 F.3d 691, 695 & n.1 (6th Cir. 2020) (citing *Vonn* for authority to consult non-jury evidence without addressing *Vonn*'s limitation to plea context); *United States v. Reed*, 941 F.3d 1018, 1021 (11th Cir. 2019) (same); see also *United States v. Hollingshed*, 940 F.3d 410, 415–16 (8th Cir. 2019) (assuming without analysis that consulting non-jury evidence is permissible); *United States v. Benamor*, 937 F.3d 1182, 1189 (9th Cir. 2019) (same).

The Second Circuit took a more cautious approach in *United States v. Miller*, 954 F.3d 551 (2d Cir. 2020). Like the defendants here, the defendant in *Miller* was convicted by a jury of violating § 922(g)(1) after stipulating under *Old Chief* to the fact of a prior felony conviction. See *id.* at 556, 559 & n.23. At the third prong of the plain-error test—the effect on substantial rights—*Miller* expressly limited itself "to the evidence actually presented to the jury." *Id.* at 558 & n.17, citing *Neder v. United States*, 527 U.S. 1, 19 (1999). It concluded that, on such a limited record, "the substantial-rights analysis" was "a difficult one," and declined to resolve it. *Id.* at 559. The court proceeded to the fourth prong. Citing the constraints that *Old Chief* had imposed on the government at trial, the Second Circuit concluded that "in the limited context of [its] fourth-prong analysis," it would "consider reliable evidence in the record on appeal that was not a part of the trial record," namely the PSR. *Id.* at 560.

The Fifth Circuit acknowledged this issue but declined to take a side in *Huntsberry*, 956 F.3d 270. The defendant in *Huntsberry* also had stipulated to a prior conviction under *Old Chief*. *Id.* at 285 n.8. The Fifth Circuit noted that any use of sentencing evidence "may be in tension with our precedent that 'we review for plain error based on *the record before the district court.*'" *Id.* at 284, quoting *United States v. Ceron*, 775 F.3d 222, 226 (5th Cir. 2014). It concluded, however, that it could avoid the question through judicial notice of "the facts of Huntsberry's prior felony conviction," based not on the PSR but rather on the original "state court record of conviction," as submitted on appeal. *Id.* at 284–85. In the appeals before us, the government provided state court records for potential judicial notice only in Jones's case, so we cannot avoid the record issue.

We think the Second Circuit's distinction between the third and fourth prongs of the *Olano* plain-error test hews most closely to the governing precedents and best fits the problem posed by *Rehaif* claims. The third prong "calls for the same inquiry as 'harmless error' analysis, except that here the defendant bears the burden of persuasion with respect to prejudice." *Ross*, 77 F.3d at 1540, citing *Olano*, 507 U.S. at 734–35; see also *United States v. Turner*, 651 F.3d 743, 748 (7th Cir. 2011) ("The third prong of the plain error test—whether the error affected the defendant's substantial rights—calls for essentially the same inquiry as harmless error analysis."). The Supreme Court has made clear that harmless-error analysis looks only to the trial record to measure the effect of trial error. See *Neder*, 527 U.S. at 19 (in assessing "whether the jury verdict would have been the same absent the error … a court, in typical appellate-court fashion, asks whether the record

contains evidence that could rationally lead to a contrary finding with respect to the omitted element"); *Fulminante*, 499 U.S. at 307–08 ("error which occurred during the presentation of the case to the jury … may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt").

This restriction to the jury record flows logically from the nature of a substantial-rights inquiry on direct review. The more abstract question of the defendant's actual guilt or innocence is not the issue. Rather, the appellate court asks what effect the error could have had on the verdict in the trial actually conducted. The Supreme Court explained in *Sullivan v. Louisiana* that the Sixth Amendment mandates this approach:

> The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee.

508 U.S. 275, 279 (1993); see also *Kotteakos v. United States*, 328 U.S. 750, 765 (1946) ("The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence."). A defendant "need not establish that in a trial without the error, a reasonable jury *would have acquitted* him; he must demonstrate that the jury verdict

in this case *was actually affected* by the district court's [error]." *Ross*, 77 F.3d at 1540 (emphasis added). An effect on the verdict can of course be measured only against what the jury saw, hence the restricted record for the substantial-rights analysis.

Putting these pieces together, because the substantial-rights assessment is the same under either Rule 52(a) or Rule 52(b), both harmless-error analysis and the third prong of the plain-error test look to the trial record when a defendant has exercised his right to a trial. Our prior cases concerning both instructional and indictment errors have respected this limit. See, e.g., *United States v. Groce*, 891 F.3d 260, 269–70 (7th Cir. 2018) (on plain-error review, upholding verdict despite error in jury instructions based on "overwhelming evidence" presented to the jury); *United States v. Daniels*, 803 F.3d 335, 340–41 (7th Cir. 2015) ("[A]n error involving [indictment] misjoinder 'affects substantial rights' and requires reversal only if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'"), quoting *United States v. Lane*, 474 U.S. 438, 449 (1986); *United States v. Peters*, 435 F.3d 746, 754 (7th Cir. 2006) (reviewing jury instructions for plain error "in light of the facts of the case and the evidence presented").

But the Supreme Court drew a clear line in *Olano* between the first three prongs of the plain-error test and the fourth, even devoting a separate section of the opinion to the fourth prong. 507 U.S. at 732–37. The Court described the first three prongs as "limitation[s] on appellate authority." *Id.* at 732–34. They determine whether, under Rule 52(b), a "plain error" that an appellate court may correct occurred at all. Even if the

first three prongs are satisfied, though, the appellate court retains discretion to leave an error uncorrected: "Rule 52(b) is permissive, not mandatory. If the forfeited error is 'plain' and 'affect[s] substantial rights,' the court of appeals has authority to order correction, but is not required to do so." *Id.* at 735. In later rulings, the Court has continued to emphasize the discretionary nature of prong four. See *Puckett*, 556 U.S. at 135 ("if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error"); *Johnson*, 520 U.S. at 467 (same); see also *United States v. Luepke*, 495 F.3d 443, 451 (7th Cir. 2007) ("Having determined that the elements of plain error are satisfied, we turn to our final inquiry, whether, in the exercise of discretion, we should correct the error.").

A court should exercise its discretion at the fourth prong only if "the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Olano*, 507 U.S. at 736 (alteration in original), quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936). We explained the difference between "substantial rights," on the one hand, and "fairness, integrity or public reputation," on the other, in *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005). Crucially, only the latter has been compared to a "miscarriage of justice," or in other words, "a substantial risk of convicting an innocent person." *Id.* at 481, citing among others *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982). To be sure, an error need not "shock the conscience" to satisfy prong four, and defendants can sometimes show an effect on fairness or integrity without a claim of innocence. See *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906 (2018). Still, though a defendant's likelihood of actual guilt or innocence does not necessarily control the third prong of plain-error review, it may play a role at prong four: "the first element merely requires prejudice, in the sense that the

verdict might have been different, whereas the second requires confidence that if the error is not corrected the result will be intolerable, such as the conviction of an innocent person or subjecting a guilty person to an illegally long sentence." *Paladino*, 401 F.3d at 481.[7]

In sum, we have broad discretion under prong four to leave even plain errors uncorrected where we have no doubt as to the ultimate result of further proceedings. We agree with the Second Circuit that this discretion necessarily implies some power to look beyond the trial record to assess an error's effect, at least for the errors argued here, where the governing law at the time of their trials (*Old Chief*) prevented the government from offering a great deal of circumstantial evidence showing that these defendants knew they had been convicted of several felonies. See *Miller*, 954 F.3d at 559–60. Our decisions in the wake of *Apprendi*, 530 U.S. 466, adopted this approach. After *Apprendi*, we reviewed for plain error many sentences that had been enhanced based on drug quantities found by a judge, which was no longer permissible. We often affirmed in reliance on overwhelming drug quantity evidence *presented at sentencing*, and we cited the discretionary fourth prong as the basis for affirmance. See, e.g., *United States v. Martinez*, 258 F.3d 582, 586–87 (7th Cir. 2001); *United States v.*

---

[7] The likelihood of a defendant's actual guilt is also often relevant on collateral review, which proceeds under distinct legal standards we have no need to address here. See *Olano*, 507 U.S. at 736 ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."); Henry J. Friendly, *Is Innocence Irrelevant?: Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 142 (1970) (arguing that "convictions should be subject to collateral attack only when the prisoner supplements his constitutional plea with a colorable claim of innocence").

*Patterson*, 241 F.3d 912, 913–14 (7th Cir. 2001); *Nance*, 236 F.3d at 826.

In these appeals, we confine our inquiry to the trial records and a narrow category of highly reliable information outside the trial records: the defendants' prior offenses and sentences served in prison, as reflected in undisputed portions of their PSRs. Considering these at prong four does not adversely affect the fairness, integrity, or public reputation of judicial proceedings. First, the defendants had every incentive to challenge at sentencing any incorrect PSR information about prior felonies given its impact on Sentencing Guidelines calculations and factors under 18 U.S.C. § 3553(a). Second, the trial records were left bare of such information largely because *Old Chief* stipulations barred the government from offering it. Finally, the Supreme Court has long recognized that "the fact of a prior conviction" does not raise the same Sixth Amendment concerns as other facts. See *Apprendi*, 530 U.S. at 490, interpreting *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). Few accused defendants wish to put their full felony records on display before a jury. We therefore conclude that we may consider prior criminal convictions as reflected in PSRs in exercising our discretion under prong four of the plain-error test.

III. *Application to These Appeals*

We now apply the principles explained above to each of these three appeals. We conclude that the argued *Rehaif* errors do not require reversal of any of the § 922(g) convictions.

A. *Carlos Maez*

Maez argues that his jury instructions and indictment both omitted the element of knowledge of felon status, constituting plain error under *Rehaif*. We start with the jury instructions.

1. *Jury Instructions*

The jury instructions at Maez's trial said in relevant part that the government had to prove the following facts beyond a reasonable doubt: "1. The defendant knowingly possessed a firearm; and 2. At the time of the charged act, the defendant had previously been convicted of a felony, meaning a crime punishable by more than a year of imprisonment." This instruction tracked circuit precedent and the pattern jury instructions in use at the time, but the government concedes that the instruction was incomplete and that the error was plain in light of *Rehaif*. We agree with the parties that prongs one and two of the *Olano* plain-error test are met here because the instruction's second element did not include defendant's knowledge of his status as a felon.

The evidence from Maez's trial, however, prevents him from satisfying *Olano*'s third prong, an effect on his substantial rights. To decide whether "an instruction that omitted an element of the crime" affected substantial rights, the reviewing court asks whether "it appeared 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *United States v. Caira*, 737 F.3d 455, 464 (7th Cir. 2013), quoting *Neder v. United States*, 527 U.S. 1, 15 (1999). If "overwhelming evidence" before the jury proved the omitted element, we can usually conclude that the error did not contribute to the verdict. See, e.g., *United States v. Groce*, 891 F.3d 260, 269 (7th Cir. 2018); *United States v. Matthews*, 505 F.3d 698, 706 (7th Cir. 2007).

Here, the jury heard several pieces of undisputed evidence that strongly support an inference that Maez knew he was a felon. First, Maez stipulated under *Old Chief* that at the time of the offense, he had "previously been convicted of a felony

crime punishable by more than a year of imprisonment." A jury could reasonably think that a felony conviction is a life experience unlikely to be forgotten. Second, Maez's daughter testified at trial that she had no relationship with Maez until she was eighteen because he had been "incarcerated [her] whole life." Finally, Maez's parole officer testified that he supervised Maez after his release from prison and that Maez was on parole at the time of the bank robbery. In the absence of any contradictory evidence, these facts provided powerful circumstantial evidence that Maez knew he had been convicted of at least one prior felony.

Even if Maez could show prejudice at prong three, we would decline to exercise our discretion to correct any error under prong four of the *Olano* test. Undisputed portions of the PSR provide even more circumstantial evidence of Maez's knowledge. Maez, now in his early forties, has spent most of his adult life in prison. He was convicted of his first two felonies when he was seventeen and sentenced to three years in prison. After being released in 1999, he was convicted of another felony five months later and sentenced to twelve years in prison. He was paroled for about a month in 2010 before he committed two more felonies and was sentenced to eight years in prison. We are thus confident that Maez knew he was a felon. Remand would not produce a different result. Affirmance in this instance protects rather than harms "the fairness, integrity or public reputation of judicial proceedings." As in *Johnson v. United States*, 520 U.S. 461, 470 (1997), "it would be the reversal of a conviction such as this which would have that effect."

2. *Indictment*

An alleged flaw in the indictment is a plain error only
when the indictment fails as a result "to charge the offense by
any reasonable construction." *United States v. Frank Smith*, 223
F.3d 554, 571 (7th Cir. 2000); see also *Grayson Enterprises*, 950
F.3d at 402. Maez's indictment read: "CARLOS MAEZ, de-
fendant herein, did knowingly possess a firearm, after having
been convicted of a crime punishable by more than a year of
imprisonment, that had travelled through interstate or for-
eign commerce." This language closely tracked the statutes
and has a reasonable construction that charges every element
of a § 922(g) offense, even after *Rehaif*. The mens rea term
"knowingly" came at the start of a series. A grammatically
correct and natural reading of the text applies "knowingly" to
each of the subsequent clauses. In fact, the *Rehaif* Court read
§ 922(g) and § 924(a)(2) in precisely this manner to require
knowledge of prohibited status in the first place. See 139 S. Ct.
at 2196 ("As a matter of ordinary English grammar, we nor-
mally read the statutory term 'knowingly' as applying to all
the subsequently listed elements of the crime." (citation omit-
ted)). That is not the only possible construction of the indict-
ment, but it is at least a reasonable one.

Indictments that track the statutory language so closely
are usually sufficient. See *United States v. Craig Smith*, 230 F.3d
300, 305 (7th Cir. 2000) ("[I]t is generally acceptable for the in-
dictment to 'track' the words of the statute itself, so long as
those words expressly set forth all the elements necessary to
constitute the offense intended to be punished."); see also
*United States v. White*, 610 F.3d 956, 958–59 (7th Cir. 2010)
(same). In fact, in *Frank Smith*, we held that an indictment that
omitted the mens rea term—"knowingly and intentionally"—

still had a reasonable construction that charged the offense because it tracked the rest of the statutory language. 223 F.3d at 571–72, discussing 21 U.S.C. § 861(a). Maez's indictment did not contain a plain error.

B. *Cameron Battiste*

Battiste, too, challenges his jury instructions and indictment. We affirm Battiste's conviction with a few variations on our reasoning in Maez's case.

1. *Jury Instructions*

As in Maez's case, the government concedes that the jury instructions omitted knowledge of status, constituting an "error" that is "plain." The third prong of the plain-error test then asks whether Battiste's substantial rights were affected based on the trial record. His trial focused on the knowing-possession element, which was sharply disputed. The jury also heard some evidence relating to his status as a felon. Like Maez, he stipulated under *Old Chief* to a prior conviction. The jury also heard that Battiste attempted to flee from arresting agents. He then started gesturing toward men back in his apartment complex, apparently seeking to draw their attention to a bag of firearms lying on the lawn that the agents had not yet noticed. This testimony was at least probative of the fact that Battiste knew he had a prohibited status when he possessed the firearms. Still, the trial evidence was not overwhelming on the new *Rehaif* element of knowledge of status as a felon. Cf. *United States v. Miller*, 954 F.3d 551, 559 (2d Cir. 2020) (declining to resolve "difficult" substantial-rights analysis on plain-error review after *Rehaif*).

Even if we assume Battiste could satisfy the third prong of plain-error review, we decline to exercise our discretion to

correct this error under the fourth prong because there is no
risk of a "miscarriage of justice" in Battiste's case. See *United
States v. Paladino*, 401 F.3d 471, 481 (7th Cir. 2005). Battiste's
PSR, to which he lodged no objection, shows that he had at
least four prior felony convictions. He served a year or more
in prison on three of those convictions. In fact, Battiste had
once been charged under Illinois law on two counts of the
crime at issue here, felon in possession of a firearm. There is
no doubt that a jury permitted to hear such evidence would
find Battiste knew his felon status. The plain error in the jury
instructions did not seriously affect the fairness, integrity, or
public reputation of judicial proceedings. *Olano*, 507 U.S. at
736.

### 2. *Indictment*

Battiste's indictment was phrased differently than Maez's,
with the word "knowingly" placed later in the sentence. Bat-
tiste's indictment read: "CAMERON BATTISTE … having
previously been convicted of a crime punishable by a term of
imprisonment exceeding one year, did knowingly possess in
and affecting interstate commerce a firearm … ." Here,
"knowingly" came after the fact of the prior felony conviction,
and a typical reader would not apply it to the earlier clause
set off by commas. We are not sure it would be a "reasonable
construction" to do so. *Frank Smith*, 223 F.3d at 571. We as-
sume there was a plain error here.[8]

---

[8] The Second Circuit has held that similar indictment wording did not
fail to *confer jurisdiction* on the district court since the language resembled
what the Supreme Court was interpreting in *Rehaif*. See *United States v.
Balde*, 943 F.3d 73, 89–90 (2d Cir. 2019). Unlike the Second Circuit, how-
ever, we do not recognize any indictment errors as jurisdictional, so *Balde*
offers limited guidance. See *United States v. Muresanu*, 951 F.3d 833, 839

But even assuming a plain error in the indictment and even assuming an effect on Battiste's substantial rights, we still decline to exercise our discretion to correct the error. As with the missing element in the jury instructions, it is clear that the wording of the indictment did not undermine the fairness or integrity of judicial proceedings. Considering the evidence heard by the trial jury and Battiste's extensive prior criminal history laid out in detail in his PSR, "we can be confident in retrospect that the grand jury (which acts under a lower burden of persuasion) would have reached the same conclusion." *United States v. Patterson*, 241 F.3d 912, 914 (7th Cir. 2001). If we remanded, there is no chance the result would change.

### C. *Matthew Jones*

Jones's appeal raises challenges to his jury instructions and indictment parallel to those of Maez and Battiste. Jones also appeals the denial of his motion for a judgment of acquittal at the close of evidence. He also challenges his sentence because the district court lengthened his prison term to allow more rehabilitation through prison programs.

#### 1. *Rule 29 Motion*

We start with the denied Rule 29 motion for judgment of acquittal. As explained above, Jones preserved his challenge to the sufficiency of the evidence under *Rehaif* with a general motion. We thus review the district court's denial de novo: "we do not defer to the district judge's decision." *United States v. Garcia*, 919 F.3d 489, 496 (7th Cir. 2019). Nevertheless, the

---

(7th Cir. 2020) ("[D]efects in an indictment do not deprive the court of subject-matter jurisdiction, and this is so even when the defect is a failure to state a federal offense.").

standard remains demanding for criminal defendants: "We 'consider the evidence in the light most favorable to the Government,' and will reverse 'only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.'" *United States v. Dewitt*, 943 F.3d 1092, 1096 (7th Cir. 2019), quoting *United States v. Blassingame*, 197 F.3d 271, 284 (7th Cir. 1999). This appeal turns on whether the evidence presented to the jury permits an inference beyond a reasonable doubt that Jones knew he had committed a felony. The government tried the case without knowing it needed to prove Jones had that knowledge, but we find that the evidence at trial did permit, but not require, such an inference.

The first piece of evidence was the *Old Chief* stipulation, which said: "Prior to July 15, 2018, the defendant, Matthew R. Jones, had been convicted of a felony crime that was punishable by a term of imprisonment of more than one year." A juror could apply her common sense and conclude that it was highly likely that Jones remembered having been convicted of a felony, a major life event. The other important evidence was Jones's behavior at the time of the search and arrest. An officer testified at trial that when Jones was first presented with the search warrant for his house, he denied having a key. He insisted it was his mother's house. But the officers found that the keys in Jones's hands opened not only the front door but also locked interior doors and a padlocked room that contained the firearms. Without any contradicting or impeaching evidence on these points, the combination of the *Old Chief* stipulation and the false denials about the house where Jones possessed firearms was sufficient to permit the required inference of knowledge of his status as a felon.

To be clear, we are not saying that an *Old Chief* stipulation, standing alone, would show *conclusively* that a *Rehaif* error in jury instructions did not affect substantial rights. See *United States v. Hollingshed*, 940 F.3d 410, 415 (8th Cir. 2019) (in plain-error review of *Rehaif* error in jury instructions, "we will assume that Hollingshed's stipulation does not resolve the issue of whether he knew he was a felon"); *United States v. Benamor*, 937 F.3d 1182, 1188–89 (9th Cir. 2019) (assuming "that the stipulation does not end the discussion as to Defendant's *knowledge* of his status as a felon," but finding plain-error test was not satisfied where PSR showed defendant had seven prior felony convictions).

We also do not have to go quite so far as to hold that an *Old Chief* stipulation standing alone is sufficient to infer, beyond a reasonable doubt, a defendant's knowledge of his status as a felon at the time of the charged possession of the firearm. Cf. *United States v. Ward*, 957 F.3d 691, 696 (6th Cir. 2020) (holding that stipulation alone is sufficient). We decide here that Jones's *Old Chief* stipulation, combined with the evidence of his evasive behavior at the time of the search, was sufficient to permit that inference of his knowledge. See generally *McFadden v. United States*, 135 S. Ct. 2298, 2304 n.1 (2015) (noting that for "most *mens rea* requirements, the Government can prove the requisite mental state through either direct evidence or circumstantial evidence," including "evasive behavior with respect to law enforcement"). Although § 922(g) requires that the government prove only knowledge of prohibited status, not knowledge of the prohibition itself, see above at 5–8, facts suggesting the defendant knew that he could not lawfully possess firearms point toward knowledge of his status.

We have said that a "judge facing a Rule 29 motion in a criminal case might benefit from first asking whether, if the evidence had been presented in a civil case, it would be sufficient to send the case to the jury," in other words, sufficient to defeat a motion for summary judgment. *Garcia*, 919 F.3d at 497–98. Jones's evasive behavior, combined with his stipulation to a prior felony conviction, would put the issue of his knowledge in the province of the jury even under *Rehaif*-compliant instructions. Denial of the Rule 29 motion was appropriate.[9]

### 2. *Jury Instructions and Indictment*

Jones's challenges to the jury instructions and indictment are indistinguishable from Battiste's. As to the jury instructions, we do not resolve whether the missing knowledge element affected Jones's substantial rights. The evidence at trial permitted a finding of guilt on the missing element, but it was not so overwhelming as to eliminate any possibility of an effect on the verdict. Instead, we decline to exercise our discretion under prong four of the plain-error test in light of our limited review of Jones's PSR. His criminal history includes multiple felony convictions, at least one of which led to his spending over one year in prison. He had even been convicted before of unlawful possession of a weapon by a felon under Illinois law and sentenced to four years in prison on that charge. We are confident that when he possessed the charged

---

[9] Because sufficient evidence supported the jury's verdict, we do not address the government's argument that Jones invited any error in the denial of his Rule 29 motion. We also do not address Jones's contention on appeal that his limited intellect rendered him unaware of his status because the jury heard no such evidence.

firearms in this case, he knew he had been convicted of a prior felony.

Like Battiste's indictment, Jones's indictment charged that he, "having been previously convicted in a court in the State of Illinois of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting commerce, firearms … ." As in Battiste's appeal, it might not be a "reasonable construction" of the indictment to apply the "knowingly" term to the preceding clause concerning the fact of a prior conviction. *Frank Smith*, 223 F.3d at 571. But as summarized above, Jones's PSR shows an extensive criminal history that leaves no doubt as to his knowledge of his status as a felon or as to the result of impaneling a second grand jury. We decline to exercise our discretion to correct any error in the indictment.

### 3. *Sentence*

Finally, Jones challenges his sentence, arguing that the district court committed a *Tapia* error. Sentencing courts are prohibited from imposing a term of incarceration for rehabilitative ends because "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). The Supreme Court held in *Tapia v. United States*, 564 U.S. 319, 334 (2011), that this statute "prevents a sentencing court from imposing or lengthening a prison term because the court thinks an offender will benefit from a prison treatment program."

Jones argues, and the government and we agree, that the judge's explanation for his sentence showed a *Tapia* error. See Sent. Tr. at 21, 29. When a term of imprisonment is improperly imposed for rehabilitative purposes, remand for resentencing

is the appropriate remedy. See *United States v. Kopp*, 922 F.3d 337, 343 (7th Cir. 2019).

*Conclusion*

The judgment of the district court in *United States v. Maez*, No. 19-1287, is AFFIRMED. The conviction in *United States v. Jones*, No. 19-1768, is AFFIRMED, but the sentence is VACATED and the case is remanded to the district court for resentencing. The judgment of the district court in *United States v. Battiste*, No. 19-2049, is AFFIRMED.