In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 22-2364

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRYANT D. ARON,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 19-cr-00048 — **Holly A. Brady**, *Chief Judge.*

---

ARGUED OCTOBER 24, 2023 — DECIDED APRIL 16, 2024

---

Before ROVNER, WOOD, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* On June 20, 2019, a grand jury indicted Bryant D. Aron on the charge of possession of a firearm and ammunition as a felon in violation of 18 U.S.C. § 922(g)(1). Aron agreed to plead guilty pursuant to a binding plea agreement. The district court, however, refused to accept the sentencing recommendation of 96 months' imprisonment in the plea agreement. Because it was a binding plea agreement, Aron was then given the option of withdrawing his guilty

plea and he chose to do so. Rather than negotiate a different plea agreement, Aron opted to proceed to trial. A jury convicted him of the charge, and the court sentenced him to the statutory maximum of 120 months' imprisonment. On appeal, Aron raises a number of challenges to the indictment and to the plea and sentencing process.

First, he challenges the indictment itself, asserting that the indictment failed to include a known and necessary element, that he had good cause for failing to raise that objection in the district court, and that the deficiency in the indictment was either structural error or met the plain error standard. These arguments cannot succeed under circuit and Supreme Court precedent.

The indictment charged a violation of 18 U.S.C. § 922(g)(1), which provides in relevant part that "it shall be unlawful for any person … who has been convicted in any court of … a crime punishable by imprisonment for a term exceeding one year … to … possess in or affecting commerce, any firearm or ammunition." In *Rehaif v. United States*, 588 U.S. ___, 139 S. Ct. 2191, 2195 (2019), the Supreme Court noted that § 924(a) provides that any person who "knowingly violates" § 922(g) shall be subject to a sentence of imprisonment of up to 10 years. As to that knowledge requirement, prior to the Supreme Court's decision in *Rehaif*, the federal appellate courts unanimously had held that § 922(g) required the government to prove that a defendant knowingly possessed a firearm but did not require proof that the defendant knew that he belonged to one of the classes of persons prohibited from such possession, such as felons. *United States v. Williams*, 946 F.3d 968, 970 (7th Cir. 2020). In *Rehaif*, however, the Court upended that interpretation of § 922(g), and held that the knowledge

requirement of offenses under § 922(g) and § 924(a) applies not only to the possession element but also to the status element. 139 S. Ct. at 2196–97. Therefore, the offense in this case requires the government to show not only that Aron knew that he possessed the firearm, but also that he knew that he had the relevant status when he did so—namely, that he had previously been convicted of a crime punishable by more than one year of imprisonment. *Id*. at 2194.

That Aron actually possessed the requisite knowledge is not at issue here. Prior to trial in this case, Aron stipulated that he had been convicted of crimes punishable by imprisonment exceeding one year, identified those offenses, and stipulated to his knowledge of those facts. And he concedes that the jury was properly instructed as to the knowledge element and found him guilty. He challenges only the failure to include in the indictment language itself the element of the knowledge requirement as to his status.

The indictment in this case provided in relevant part that "Aron, defendant herein, being a person who has been convicted in a Court of a crime punishable by imprisonment for a term exceeding one year … did possess in and affecting commerce a firearm and ammunition, and did so knowingly." The government first counters that the language of the indictment could be read as applying the knowledge requirement to both possession and status, analogizing the language here to that in *United States v. Maez*, 960 F.3d 949, 964–65 (7th Cir. 2020). We need not consider this argument, however, because even if it cannot be read as requiring knowledge of his status as a felon, Aron is not entitled to any relief in this challenge.

Federal Rule of Criminal Procedure 12(b)(3) sets forth a list of motions that must be made before trial, and provides in

subsection (B) that "a defect in the indictment or information" including failure to state an offense, "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." We have held that defects in an indictment do not deprive the court of subject matter jurisdiction even when the defect is the failure to state a federal offense. *United States v. Muresanu*, 951 F.3d 833, 839 (7th Cir. 2020). "Because indictment defects go to the merits of the case—not the court's power to hear it—an objection to a defective indictment can be waived." *Id.*; *Maez*, 960 F.3d at 956. Aron did not raise his objection to the indictment in a pretrial motion, waiting instead until his appeal to assert that the indictment was defective. Because he failed to raise the objection pretrial, the objection is untimely. Fed. R. Crim. P. 12(c)(3).

The determination that the timeliness requirement was not met does not end the inquiry. Pursuant to Federal Rule of Criminal Procedure 12(c)(3), where a Rule 12(b)(3) motion is not timely made, a court may consider the defense or objection upon a showing of good cause. That good-cause determination is committed to the district court rather than the court of appeals. *United States v. Acox*, 595 F.3d 729, 732 (7th Cir. 2010). As we recognized in *Maez*, however, " [w]e have interpreted this provision to permit new arguments on appeal as well, provided that 'the district court would have abused its discretion if it had concluded that [the defendant] lacked good cause.'" 960 F.3d at 956, quoting *United States v. Thomas*, 897 F.3d 807, 815 (7th Cir. 2018); *Acox*, 595 F.3d at 732.

Aron asserts that he has met this burden. He argues that the district court would have abused its discretion if determining that he lacked good cause to file an untimely motion,

pointing to our decision in *Maez*. That is an inapt comparison. With respect to both the *Maez* cases (because *Maez* addressed challenges by three defendants regarding separate trials) and this case, the *Rehaif* decision was issued after the indictments issued and changed the status quo as to the knowledge requirement for the offense. In *Maez*, however, the defendants could not file a timely motion—which is one filed pretrial—because *Rehaif* was issued after their trials. It is well-established that "[a]n intervening legal decision that overturns settled law amounts to good cause for this purpose." *Maez*, 960 F.3d at 956. Therefore, the district court judges in *Maez* would have abused their discretion if they determined that the defendants lacked good cause for the failure to raise the motions timely. The *Rehaif* argument underlying the objections was not reasonably available pretrial.

Aron's circumstance is starkly different, as the timeline makes clear. Aron's indictment was returned on June 20, 2019, and *Rehaif* was issued the very next day. Therefore, Aron could have brought a timely motion challenging the indictment from the day after the indictment was returned until the trial more than two years later. As we have noted, defects in the indictment including the failure to state an offense must be raised by a pretrial motion "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3). That reflects the situation here. The *Rehaif* argument was reasonably available to Aron for nearly the entire pretrial process, and therefore the district court would not have abused its discretion to refuse to consider an untimely motion. See, e.g., *Thomas*, 897 F.3d at 815 (holding that the district court would not abuse its discretion in denying good cause where a circuit split reflected the uncertainty as to the legal issue and the

defendant knew all he needed to know to raise the argument). Because Aron has failed to demonstrate good cause, we do not conduct even plain error review of his claim. *United States v. Lockett*, 859 F.3d 425, 428 (7th Cir. 2017)

Aron next raises a number of challenges to the court's rejection of his binding plea agreement. As an initial matter, he contends that by accepting the magistrate judge's report and recommendation without reservation, the district court accepted his binding plea agreement and lacked the authority to then subsequently reject it. In the alternative, he asserts that the court: (1) improperly inserted itself into the plea negotiation process; (2) abused its discretion by failing to provide a sound reason for rejecting the binding plea agreement; and (3) failed to provide enough notice of its rejection of the plea agreement to give Aron the opportunity to challenge aspects of the Presentence Investigation Report (PSR.)

A binding plea agreement is one in which the parties agree that a specific sentence is the appropriate disposition of the case. Fed. R. Crim. P. 11(c)(1)(C). When presented with such an agreement, a district court may accept it, reject it, or defer a decision until the court has reviewed the presentence investigation report. *Id*. at 11(c)(3)(A). The Sentencing Guidelines recommend that district courts pursue the last option, deferring acceptance of binding plea agreements until the court has had an opportunity to consider the presentence report. U.S.S.G. § 6B1.1 commentary.

The argument that the district court accepted the binding plea agreement lacks support in the record. First, it should have been clear to the defendant from the outset that the binding plea agreement was subject to acceptance by the district court at sentencing following completion of the PSR. The

revised plea agreement itself recognized that the district court would determine the sentence following completion of the PSR. Moreover, at the change of plea hearing before the magistrate judge, Aron was explicitly apprised of the process, including the need for the district court to decide whether to accept the plea agreement at the sentencing hearing. The magistrate judge stated that "[i]f … I decide that your plea is knowingly and voluntarily made and it's supported by a basis in fact, then I will prepare findings and I will recommend to Judge Brady that your guilty plea be accepted and a judgment of guilty be entered. Now, I'm also going to order a presentence investigation report. And if it is necessary for Judge Brady to accept your plea agreement because it contains binding terms, then she will do that at the sentencing hearing before imposing sentence." R. 120 at 14–15. The magistrate judge later again informed Aron that some of the terms of the agreement may be binding on the court, and that "[w]hat that means is, it would become part of the judgment in this case if the District Court accepts **both your guilty plea and your plea agreement** with the Government." *Id*. at 16–17 (emphasis added). The magistrate judge thus distinguished acceptance of the plea from acceptance of the plea agreement.

The magistrate judge further explained the process, explicitly addressing the provision in the plea agreement setting forth a sentence of 96 months, and clarifying that the district court would make the determination at sentencing after the PSR was completed:

> In this paragraph, it states that you and the Government have agreed that you should receive a sentence of 96 months' imprisonment pursuant

to Federal Rule of Criminal Procedure
11(c)(1)(C).

Do you understand, sir, that **if at the time of sentencing the District Court chooses to accept your plea agreement** with the Government, then the term in paragraph 8(c) that I just read to you will become binding upon the Court; that is to say, it would be included in the judgment of the case; that is to say that you would receive a sentence of 96 months' imprisonment.

Now, on the other hand, **if the District Court does not accept the agreement that you have with the Government that you receive a sentence of 96 months' imprisonment, the Court would give you an opportunity to withdraw your plea of guilty. At that point, if you chose not to withdraw your plea of guilty, then the Court would be free to sentence you more severely and would not be bound by the terms of that paragraph**. Do you understand that, sir?

…

**You do understand, sir, that the Court is not going to be able to determine the advisory guidelines sentence for your case until after a presentence report has been completed and you and the Government have an opportunity to read that report and challenge the facts contained within the report as well as the application of the guidelines recommended by your probation officer; and the Court may not be**

> **able to accept your agreement with the Government that you should receive 96 months in prison?** Do you understand that?
>
> …
>
> **I will recommend that your guilty plea be accepted and a judgment of guilty be entered for this Indictment.**
>
> **Now, I'm also going to order the United States Probation Office to prepare a presentence investigation report**. And it's in your best interests, Mr. Aron, to fully cooperate with your probation officer and answer all of the questions that they put to you as completely and as honestly as you can, because your answers are going to wind up in the creation of [a] presentence report, and **this report is going to contain a calculation of the sentencing guideline range and indicate how those [§] 3553(a) sentencing factors apply in your case.**
>
> **Now, it's going to be really important in Judge Brady's decision as to whether she can accept your plea agreement and ultimately, then, what your sentence would be.**

*Id*. at 17, 22, 31–32 (emphasis added). The magistrate judge therefore made clear that the acceptance of the plea of guilty did not ensure the acceptance of the binding plea agreement, and that the acceptance or rejection of the plea agreement would occur only at the sentencing hearing after the PSR was completed. That is precisely the process that followed. In its Order accepting Findings and Recommendations, the district

court judge adopted the findings and recommendations of the magistrate judge, which recommended acceptance of the guilty plea and recognized that a presentence report would be prepared and that the court could impose the maximum sentence, and the court order also stated that the guilty plea was accepted subject to the court's consideration of the plea agreement. Furthermore, the behavior of counsel at the sentencing hearing makes clear that they understood that the court had not yet made its determination as to whether to accept the binding plea agreement. The court at sentencing asked both counsel to present their arguments in favor of the binding plea agreement and the sentence agreed to therein. The transcript reflects pages of arguments then presented as to that issue. No one was caught by surprise, and no one even hinted that they thought the plea agreement had already been accepted. There is, in short, no support in the record for the argument that the district court accepted the binding plea agreement at an earlier stage and could not then address it at sentencing.

For the same reason, Aron cannot succeed on his claim that he was not given sufficient notice of the court's rejection of the plea agreement to give him the opportunity to fully litigate the basis for the four-level enhancement in the PSR for use of the firearm during another felony offense. Aron based his challenge to the enhancement on the premise that he lacked notice that he would need to contest the PSR. But the change of plea hearing, the plea agreement, and the district court's order accepting the guilty plea, all clearly apprised him both that the plea agreement would not be accepted until sentencing after the PSR was considered, and that he needed to assert any objections to the PSR. Aron failed to challenge the facts in the PSR supporting the enhancement, including a

witness statement that identified Aron as the shooter, a jury determination finding that Aron possessed the gun used in the shooting, and the evidence that the gun was recovered from Aron's car. Those facts are sufficient to support the court's determination to impose the enhancement. Although Aron now argues that the district court erred in failing to hold an evidentiary hearing as to the enhancement, that argument is waived because at a status conference convened to address Aron's objection to the enhancement, counsel for Aron explicitly confirmed that he was *not* seeking an evidentiary hearing with respect to the enhancement.

Finally, Aron asserts that the court improperly inserted itself into the plea negotiation process and abused its discretion by failing to provide a sound reason for rejecting the binding plea agreement. Neither of those arguments has merit. The court was not involved in any way in the discussions that led to the plea agreement. As Aron acknowledges, "once the parties have themselves negotiated a plea agreement and presented that agreement to the court for approval, it is not only permitted but expected that the court will take an active role in evaluating the agreement." *United States v. Kraus*, 137 F.3d 447, 452 (7th Cir. 1998). The court must explain why it finds the agreement objectionable but must limit its comments to the plea agreement itself and cannot opine as to hypothetical plea deals or participate in plea negotiations. *United States v. Viren*, 828 F.3d 535, 539 (7th Cir. 2016).

The court limited itself to its proper role here. Its involvement began with its analysis as to whether to accept or reject the agreement, and it clearly explained, by reference to the § 3553 factors, the reasons why it felt that the 96 months' sentence in the plea agreement was insufficient. And the court

never engaged in any discussion as to what alternative plea sentence it might find acceptable. Certainly, given the small range between the 96 months' sentence in the proposed plea agreement and the 120 months' statutory maximum, the parties would have had a small range of sentences that they could have proposed in any subsequent plea agreement, but that is a product of the statutory maximum which provided a ceiling, not of any actions by the court that could be construed as inserting itself in the plea negotiation process.

None of the challenges raised by Aron in this appeal entitle him to relief. Accordingly, the decision of the district court is AFFIRMED.