In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-2665

MARCOS F. SANTIAGO,

*Petitioner-Appellant*,

*v.*

J.C. STREEVAL,

*Respondent-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:19-cv-50273 — **Philip G. Reinhard**, *Judge*.

ARGUED NOVEMBER 30, 2021 — DECIDED JUNE 2, 2022

Before KANNE, WOOD, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. This appeal takes us into the procedural intricacies of the restrictions on post-conviction relief for federal prisoners and the high substantive hurdles a prisoner must overcome for relief. The statutes and case law attempt to balance interests in finality against interests in accuracy and fairness.

Two decades ago, petitioner-appellant Marcos Santiago participated in several armed robberies in Pennsylvania. He was convicted in 2005 for interfering with interstate commerce by robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a); possessing a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c); and possessing a firearm as a felon, 18 U.S.C. § 922(g)(1). He was sentenced in the Eastern District of Pennsylvania to a total of thirty-three and a half years in prison. Santiago's convictions and sentence were affirmed on direct appeal.

Santiago has sought relief from his convictions and sentence on direct appeal and in several post-conviction actions under 28 U.S.C. §§ 2255 and 2241, so far without success. In this appeal, Santiago contends that the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), requires the courts to set aside his convictions for possessing a firearm as a felon. Because relief is not available to him on a direct appeal or in a motion under § 2255, he seeks a writ of habeas corpus under § 2241. The district court denied relief under § 2241, concluding that he could not show he was actually innocent of the felon-in-possession charges. That is what Santiago would need to show to invoke the so-called saving clause in § 2255(e), which would allow him to use § 2241 to avoid the restrictions on successive § 2255 motions. Based on the narrow procedural path available to Santiago and the high standard for winning relief—he would need to show that no reasonable juror could find him guilty beyond a reasonable doubt—we affirm.

I. *Factual and Procedural Background*

A. *The Robberies and Convictions*

Over three weeks in 2002, Santiago participated in a string of armed robberies at hotels in Pennsylvania. When he was arrested, Santiago was holding the distinctive firearm that he and his co-defendants used in the robberies. A jury in the Eastern District of Pennsylvania found Santiago guilty of three Hobbs Act counts of interference with commerce by robbery, two counts of possessing a firearm in furtherance of a crime of violence (robbery), and two counts of possessing a firearm as a felon. The felon-in-possession counts were based on Santiago's two prior state felony convictions for criminal trespass and retail theft.

In 2005, the district court in Pennsylvania sentenced Santiago to concurrent terms of 42 months in prison on the three Hobbs Act and two felon-in-possession counts. Under then-applicable law, Santiago also received mandatory consecutive 60-month and 300-month terms (five years and twenty-five years) for the two § 924(c) counts of possessing a firearm in furtherance of a crime of violence. His total prison sentence was 402 months (thirty-three and a half years). On direct appeal, the Third Circuit affirmed. *United States v. Santiago*, 180 F. App'x 345 (3d Cir. 2006).

B. *Post-Conviction Motions and Petitions*

In 2007, Santiago filed his first motion for relief under 28 U.S.C. § 2255 in the Eastern District of Pennsylvania. He was unsuccessful. *Santiago v. United States*, No. 07-253, 2008 WL 1991627 (E.D. Pa. May 8, 2008). In 2018 and 2019, Santiago also sought relief in related § 2241 and § 2255 actions, respectively, asserting that *Johnson v. United States*, 576 U.S. 591 (2015),

meant that his sentence had been enhanced improperly because Hobbs Act robbery should no longer qualify as a crime of violence under 18 U.S.C. § 924(c). The Third Circuit granted Santiago leave to pursue a successive § 2255 motion on that issue, and his motion was pending in the Eastern District of Pennsylvania at the time of this appeal. A related § 2241 petition that he filed in the Northern District of West Virginia was dismissed. *Santiago v. Coakley*, No. 3:18-cv-110, 2018 WL 5569429, at *6–7 (N.D. W. Va. Oct. 4, 2018). These other postconviction actions are not related to the issue before us, however. More recently, the Western District of Virginia dismissed another § 2241 petition raising the same *Rehaif* issue presented here, concluding that Santiago could not relitigate in that district the same challenge he has brought in this case. *Santiago v. Warden*, No. 7:20-cv-00648, 2022 WL 891970 (W.D. Va. March 25, 2022).

C. *The Current § 2241 Petition*

This appeal concerns Santiago's § 2241 petition filed in October 2019 in the Northern District of Illinois, where he was imprisoned at the time. Santiago seeks to vacate his felon-in-possession convictions, arguing that the government failed to prove all elements of the crime beyond a reasonable doubt. He relies on the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), which held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200. [1]

---

[1] Santiago was transferred to a prison in Virginia while his § 2241 action was pending before the Northern District of Illinois, but venue under

At the time of Santiago's trial, controlling Third Circuit precedent on the elements of a § 922(g)(1) charge required the government to prove only (1) that Santiago knowingly possessed the firearm, (2) that he was a convicted felon, and (3) that the firearm had traveled in interstate commerce. The government did not need to prove that Santiago knew that he was a felon or that he had some other status that made it a federal crime for him to possess a firearm. E.g., *United States v. Dodd*, 225 F.3d 340, 344 (3d Cir. 2000). Santiago also did not stipulate to having known his felon status at the time of his possession. Based on these facts, Santiago asserted in his § 2241 petition that his convictions should be vacated because the government did not prove that he knew he was a felon when he possessed the firearm.[2]

The Illinois district court denied Santiago's § 2241 petition, reasoning that he could not satisfy the requirements of the § 2255(e) saving clause, which would be his only path to relief under § 2241. In particular, the district court found that Santiago could not prove that the error he asserted was "grave enough to be deemed a miscarriage of justice," which can be shown by establishing actual innocence.

II. *Analysis*

We first lay out the legal standard for applying the saving clause in § 2255(e). We then apply that standard to the facts

---

§ 2241 is controlled by where the petitioner was imprisoned when the suit was filed. *Bunn v. Conley*, 309 F.3d 1002, 1004 (7th Cir. 2002).

[2] The Supreme Court's 2019 decision in *Rehaif* changed the law in every geographic circuit. Circuit and district courts adjusted quickly to comply with *Rehaif*. See, e.g., *United States v. Boyd*, 999 F.3d 171, 178, 180 (3d Cir. 2021); *United States v. Williams*, 946 F.3d 968, 970 (7th Cir. 2020).

here and conclude that they do not support a finding that Santiago was actually innocent of being a felon in possession of a firearm under the *Rehaif* standard. We then address Santiago's suggestion that we remand for an evidentiary hearing on his claim of actual innocence and find that such a hearing is not warranted.

A. *Legal Standard*

The vast majority of legal and factual challenges to a federal criminal conviction and sentence must be raised in a direct appeal. By statute, however, a federal prisoner may also seek collateral relief from his conviction or sentence. The ordinary path for collateral relief is a motion under 28 U.S.C. § 2255 filed in the district of conviction. *Webster v. Daniels*, 784 F.3d 1123, 1124 (7th Cir. 2015) (en banc); *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012). Section 2255 imposes strict deadlines and limits most prisoners to just one motion per judgment. A narrow alternative path may be available, however, under the so-called "saving clause" in § 2255(e). That clause allows a prisoner to seek relief under the older § 2241 habeas corpus remedy in the district where he is in custody if the § 2255 remedy is "inadequate or ineffective to test the legality of his detention." § 2255(e). We have found that the § 2255 remedy was inadequate or ineffective in a handful of cases, including *Webster v. Watson*, 975 F.3d 667 (7th Cir. 2020), as well as *In re Davenport*, 147 F.3d 605 (7th Cir. 1998), and *Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001). We review de novo a district court's denial of a § 2241 petition. *Camacho v. English*, 872 F.3d 811, 813 (7th Cir. 2017).

Relief under § 2255 is not inadequate or ineffective merely because the defendant lost or would have lost under § 2255 on the merits or on a procedural ground. *Purkey v. United*

*States*, 964 F.3d 603, 615 (7th Cir. 2020) (explaining that "'inadequate or ineffective,' taken in context, must mean something more than unsuccessful"); accord, e.g., *Fulks v. Watson*, 4 F.4th 586, 592 (7th Cir. 2021) ("The probability that Fulks would not have prevailed on his *Atkins* claim in 2008 does not mean or show that § 2255 was inadequate or ineffective."); *Higgs v. Watson*, 984 F.3d 1235, 1240 (7th Cir. 2021) ("That Higgs did not succeed with this request in the Fourth Circuit does not itself show that § 2255 was inadequate or ineffective.").

Section 2255 may be deemed inadequate or ineffective if it did not give the petitioner "a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *Davenport*, 147 F.3d at 609. To invoke the § 2255(e) saving clause, a petitioner must establish:

> (1) that he relies on "not a constitutional case, but a statutory-interpretation case, so [that he] could not have invoked it by means of a second or successive section 2255 motion," (2) that the new rule applies retroactively to cases on collateral review and could not have been invoked in his earlier proceeding; and (3) that the error is "grave enough … to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding," such as one resulting in "a conviction for a crime of which he was innocent."

*Camacho*, 872 F.3d at 813 (alterations in original), quoting *Brown*, 696 F.3d at 640.

B.  *Saving Clause Application*

The government has conceded that Santiago meets the first two criteria of the saving clause: he relies on a new statutory case (*Rehaif*) that applies retroactively. Our focus on appeal is the third element, whether Santiago has shown or could show that the government's failure to prove knowledge of his felon status caused a miscarriage of justice because he was actually innocent of the felon-in-possession crimes.

In deciding actual innocence for purposes of the § 2255(e) saving clause, we have borrowed the actual innocence standard that applies to a prisoner seeking habeas corpus relief under 28 U.S.C. §§ 2254 or 2255 despite a procedural default of his claim. See, e.g., *Davis v. Cross*, 863 F.3d 962, 964–65 (7th Cir. 2017) (prisoner seeking relief under § 2241 must show it is "more likely than not any reasonable juror would have reasonable doubt" he was guilty of offense), citing *House v. Bell*, 547 U.S. 518, 538 (2006) (§ 2254 petitioner showed actual innocence to excuse procedural default), and *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (adopting standard for actual innocence under § 2254). The Supreme Court applied that standard to a federal prisoner's § 2241 petition in a similar context, a change in the courts' understanding of the scope of a federal criminal statute. *Bousley v. United States*, 523 U.S. 614, 623 (1998), quoting the *Schlup* "no reasonable juror" standard.[3]

---

[3] In *Bousley*, the petitioner filed his petition under § 2241, but the district court had treated it as a § 2255 motion. Under either characterization, the Supreme Court applied the demanding *Schlup* standard for actual innocence. We see no reason to apply a less demanding standard to Santiago's petition under § 2241, where the key factual question was Santiago's subjective knowledge of his own criminal record at the times he possessed the firearm in 2002.

We apply that standard here, as well, as both parties' briefs assume we should. Accordingly, to prove actual innocence, the petitioner must show "that more likely than not … no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 538. This standard seeks to "ensure[] that petitioner's case is truly extraordinary … while still providing petitioner a meaningful avenue by which to avoid a manifest injustice." *Schlup*, 513 U.S. at 327 (internal citation and quotation marks omitted).

To meet that demanding standard, a petitioner must often offer "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" to prove actual innocence. *Id.* at 324; see also *House*, 547 U.S. at 553–54 (concluding that petitioner established actual innocence when he presented testimony that called into question forensic evidence connecting him to crime and substantial evidence pointed toward a different suspect). We have also found that a petitioner was actually innocent when he established that he had been convicted of a non-existent crime, *Davenport*, 147 F.3d at 610–11 (allowing § 2241 petition to proceed where prisoner showed he had been convicted of "using" a firearm in committing a drug offense when he had merely possessed the firearm, which the Supreme Court had later held was not sufficient to establish crime of "use"), or when he was categorically ineligible for the death sentence that had been imposed. *Webster*, 975 F.3d 667.

Section § 922(g)(1) of Title 18 of the United States Code makes it "unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess "any firearm or ammunition."

As noted, long after Santiago's convictions became final, the Supreme Court changed the governing law by holding in *Rehaif* that the government must also prove that the defendant "knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. *Rehaif* does not require the government to prove that the defendant knew he was prohibited from possessing a firearm. Knowledge of the relevant status is enough. *United States v. Maez*, 960 F.3d 949, 954–55 (7th Cir. 2020). To establish actual innocence here, Santiago must show that no reasonable juror would find beyond a reasonable doubt that he knew that either of his prior convictions was for a crime that carried a potential sentence of more than one year in prison. Santiago has not met that burden.

1.  *The Prior Felony Conviction*

At trial, the government relied on two of Santiago's state felony convictions to prove that his possession of a firearm violated § 922(g)(1): a 1999 conviction for criminal trespass and a 2001 conviction for retail theft. The jury in the robbery case did not designate in its verdict which felony it relied on to convict Santiago.

It is possible that either felony would qualify as a predicate felony for the § 922(g)(1) felon-in-possession convictions, but both parties focus on the criminal trespass offense. We do so as well. After Santiago pled guilty to felony criminal trespass in 1999, the state court sentenced him to time served with up to 23 months imprisonment. Right after imposing the sentence, however, the court granted Santiago parole. At that time, Santiago had served four months and 20 days in jail, all as pretrial detention. In June 2000, Santiago was arrested for disorderly conduct and then found to have violated his

parole. The court revoked his parole and ordered him to serve the balance of the maximum 23-month prison sentence. Again, however, the state court immediately paroled him. A few months later, in October 2000, the state court revoked Santiago's parole a second time after he failed to pay his fines. The court again resentenced him to serve the remainder of his 23-month prison sentence. Yet again, however, the court immediately granted Santiago parole.

2. *Arguments for Actual Innocence*

a. *Brief Custody and Minor Offense*

On appeal, Santiago asserts that, despite the 23-month sentence imposed three times, he did not know the offense was actually punishable by more than one year in prison, particularly in light of his shorter actual custody and the relatively minor nature of the offense. He contends he was thus actually innocent of unlawfully possessing a firearm as a felon. Santiago contrasts his case with those of defendants who were denied relief under *Rehaif* because they had served significant time in prison or were convicted of particularly serious underlying felonies. E.g., *United States v. Williams*, 946 F.3d 968, 973–74 (7th Cir. 2020) (denying *Rehaif* claim on direct appeal; defendant had served twelve years in prison for murder, and "even the most legally ignorant would know [murder] is subject to substantial penalties well beyond a year of imprisonment"); *United States v. Pulliam*, 973 F.3d 775, 781–82 (7th Cir. 2020) (rejecting *Rehaif* claim on direct appeal; defendant had been sentenced to prison for several different crimes, including theft and escaping from prison, and had served about five years in prison).

The argument is not persuasive. Santiago relies on cases asserting *Rehaif* claims argued on direct appeal with courts applying the plain-error standard of review. The final step in the plain-error analysis is whether "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Maez*, 960 F.3d at 962, quoting *United States v. Olano*, 507 U.S. 725, 736 (1993). Courts have compared that factor to the "miscarriage of justice" question that arises in collateral review cases such as those under § 2255 and § 2241. *Maez*, 960 F.3d at 962, citing *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982). However, "a collateral challenge may not do service for an appeal." *Frady*, 456 U.S. at 165. "[T]o obtain collateral relief [under § 2255] a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Id.* at 166. A defendant's ability to win relief under *Rehaif* in a direct appeal does not necessarily show that he could also succeed in a *Rehaif*-based action for collateral relief under § 2255, let alone under § 2241, with its substantially higher burden.

In fact, very few petitioners have won relief under *Rehaif* in collateral challenges even under § 2255, let alone § 2241. See, e.g., *Colen v. Ortiz*, No. 19-15413, 2022 WL 488943 (D.N.J. Feb. 17, 2022) (assuming petitioner showed that § 2255 was inadequate or ineffective, but denying § 2241 relief on merits; petitioner could not prove that no reasonable juror would find him guilty); *United States v. McCreary*, No. 1:19-cv-357-TLS, 2021 WL 510952, at *3 (N.D. Ind. Feb. 11, 2021) (denying § 2255 motion; defendant could not plausibly argue he lacked knowledge of his status when he had three prior state felony convictions for which he was sentenced to more than one year in prison and served time in prison); *Farrell v. Warden FCI Fairton*, No. 20-4414, 2021 WL 222684 (D.N.J. Jan. 22, 2021) (denying motion to dismiss § 2241 petition and deferring

ruling on merits); *Alexander v. Entzel*, No. 1:19-cv-1301, 2020 WL 1068060, at \*1, \*3 (C.D. Ill. Mar. 5, 2020) (denying § 2241 petition; petitioner stipulated at trial that he had been convicted of a felony punishable by more than one year in prison and did not otherwise argue that he was unaware of his felon status).

One rare exception was *Moore v. United States*, No. 20-cv-476-bbc, 2020 WL 4785432, at \*4–5 (W.D. Wis. Aug. 18, 2020), but even *Moore* did not turn on the *Rehaif* issue of knowledge, which is Santiago's theory. Moore won relief under § 2255 by showing that, at the time he possessed the firearm, he had not yet actually been convicted of a felony. See also *Delgado v. United States*, No. 20-cv-00931-JPG, 2022 WL 1227353, at \*5–6 (S.D. Ill. Apr. 26, 2022) (finding miscarriage of justice under § 2241 where petitioner offered evidence that he would not have pled guilty under § 922(g)(1) if he had known of *Rehaif* standard); *United States v. Abundis*, No. 2:20-cv-00637-MMD, 2020 WL 7029892, at \*6 (D. Nev. Nov. 30, 2020) (denying § 2255 motion on other grounds but finding that prisoner could likely show he lacked knowledge of his prohibited status where he was sentenced to only probation for a crime that could be charged as a misdemeanor or a felony).[4]

---

[4] Appellate authority on *Rehaif* issues on collateral review is scarce. *United States v. Hisey*, 12 F.4th 1231 (10th Cir. 2021), presents the closest example of a successful *Rehaif* claim. In *Hisey*, the Tenth Circuit held that the petitioner established actual innocence to overcome the procedural default barrier to § 2255 because he did not have a prohibited status. *Id.* at 1236. The court explained that because the state's mandatory sentencing rules had prevented the sentencing court from imposing a prison sentence at all because the petitioner met certain criteria, he was not convicted of a crime punishable by more than one year in prison. *Hisey* does not guide us here because there were no legal barriers preventing the state court

We recognize that the facts presented here allow some room for debate about whether Santiago knew he had been convicted of a crime punishable by more than one year in prison. He was sentenced to a maximum of 23 months in prison but immediately received parole and continued to do so even after violating parole twice. He was in custody for less than five months, and even that was pretrial detention. Santiago was also convicted of an arguably minor crime of criminal trespass, which he claims did not alert him to his felon status. This is not a case where the offense of conviction alone would tell "even the most legally ignorant" that he had the required status. See *Williams*, 946 F.3d at 974. Nevertheless, Santiago has not offered evidence that would require any reasonable juror to find a reasonable doubt. As the Supreme Court explained in *Greer v. United States*, a person who is a felon "ordinarily knows he is a felon," and "That simple truth is not lost upon juries." 141 S. Ct. 2090, 2097 (2021) (*Rehaif* error did not amount to plain error).

In addition, we find it difficult to view Santiago's felon-in-possession convictions in isolation, as his § 2241 petition seeks to do. Recall that these two felon-in-possession counts were based on his conduct in carrying out three armed robberies. Under the *Rehaif* standard, the question would be whether, at that time, Santiago knew he had previously been convicted of a crime punishable by more than one year in prison. Santiago's theory here is that he had an innocent state of mind at that time regarding possession of the firearm. In other words, Santiago is claiming that he had a non-criminal state of mind

---

from sentencing Santiago to more than one year in prison. The court imposed such a sentence and then chose to grant parole on that 23-month sentence.

regarding his possession of the firearm *while he was planning and carrying out those three armed robberies*. Given the common sense recognized in *Greer* and Santiago's possession in the course of the armed robberies here, this is not such a compelling story of an innocent state of mind that any reasonable juror would have acquitted Santiago on the felon-in-possession counts.[5]

---

[5] This is not an issue of what our dissenting colleague calls "backward propensity," post at 30, but a factual issue about Santiago's state of mind to be determined in light of all the circumstantial evidence at the relevant time, which was when he was planning and carrying out the armed robberies. His other actions and intentions at the time are relevant to his state of mind for the felon-in-possession charges. A reasonable juror could be deeply skeptical about Santiago's recent claims that he did not know that he had previously been convicted of a crime punishable by more than a year in prison.

We must also note that Santiago's sentences for the three Hobbs Act robberies and the two felon-in-possession counts were all 42 months in prison, running concurrently with each other. One might wonder what the point would be of vacating the sentences on only the felon-in-possession counts. The answer may lie in the First Step Act of 2018, which eased the rules for "stacking" mandatory minimum and consecutive sentences for multiple counts under 18 U.S.C. § 924(c). See *United States v. Sparkman*, 973 F.3d 771, 773 (7th Cir. 2020). When Santiago was convicted, his second § 924(c) conviction required a mandatory minimum sentence of 25 years on that count, to run consecutive to all other prison terms. See 18 U.S.C. § 924(c)(1)(C)(i) (2002). Section 403 of the First Step Act now requires such a sentence only if the second violation occurs after a first § 924(c) conviction had become final before the violation. That change is not retroactive, however. Still, if Santiago could have any portion of his sentencing "package" set aside, he could at least seek to be re-sentenced under the new, less severe provisions for his § 924(c) convictions.

b.  *Limited Education and Mental Health Challenges*

For the first time on appeal, Santiago tries to support his claimed lack of knowledge based on information about mental illness and limited education in his 2005 presentence report. He dropped out of school during the tenth grade, though he says he earned a GED degree a few years later. As an adult he was diagnosed with "depression, bipolar, and/or anxiety disorder" but had not been compliant with treatment. He also had a history of substance abuse and had threatened to harm himself in jails and prisons. See Dkt. No. 27, ¶¶ 104–109.

The government asserts the argument based on these factors is waived. An argument not raised in the habeas petition or in briefing before the district court is waived on appeal. *Bolton v. Akpore*, 730 F.3d 685, 694 (7th Cir. 2013). Santiago counters that we construe pro se filings liberally and hold them "to less exacting standards." *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). We do not need to decide the waiver issue. Even if these arguments were not waived, Santiago has not shown that no reasonable juror who heard evidence of his mental illness and limited education would find him guilty beyond a reasonable doubt.

In *United States v. Payne*, 964 F.3d 652 (7th Cir. 2020), the defendant challenged his felon-in-possession conviction on direct appeal. He made a similar argument that he did not understand his felon status because of his low educational attainment, heavy drug use, and childhood mental illness. *Id.* at 656. We acknowledged that "cognitive or psychological issues might impair a defendant's understanding of his sentencing exposure," but we applied plain-error review and concluded

that the defendant did not make a plausible showing that he did not know he was a felon. *Id.* at 657.

Like the defendant in *Payne*, Santiago argues in the abstract that his limited education and mental health challenges prevented him from understanding his felon status. He has not tethered those assertions to any specific evidence. We accept for purposes of argument that Santiago's limited education and mental health issues are relevant to the question of his knowledge. They provide additional grounds for debate about whether Santiago in fact knew that his conviction was punishable by more than one year in prison. But room for debate falls well short of the actual-innocence standard, which would require that *any* reasonable juror find a reasonable doubt.

*House* illustrates the standard. The petitioner in *House* relied on conclusive DNA test results that disproved an important part of the prosecution case, and on "evidentiary disarray" that undermined the reliability of key prosecution blood evidence. 547 U.S. at 540–48. Additional evidence implicated another suspect. *Id*. at 548–53. The Supreme Court described *House* as "not a case of conclusive exoneration" but as one where new evidence necessarily raised reasonable doubt. *Id*. at 554–55.

All Santiago can offer here is his uncorroborated denial that he knew he was a felon, despite his having gone through three court proceedings imposing a 23-month sentence. That denial alone, without other external evidence to bolster his assertion, fails to satisfy Santiago's burden. We agree with the district court that Santiago cannot satisfy the criteria for the § 2255(e) saving clause and win relief under § 2241. He has

not established that the government's failure to prove that he knew he was a felon resulted in a miscarriage of justice.

C. *Evidentiary Hearing*

Santiago also suggests that if we do not find he has shown actual innocence, we should remand for an evidentiary hearing and a more developed record on the issue of his knowledge or ignorance of his status as a felon. The district court did not hold an evidentiary hearing.

An evidentiary hearing is not necessary in a § 2255 or § 2241 action if "the files and records of the case conclusively show that the prisoner is entitled to no relief." *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016), quoting § 2255(b); accord, *Politte v. United States*, 852 F.2d 924, 931 (7th Cir. 1988). A hearing is also not required "if the petitioner makes allegations that are 'vague, conclusory, or palpably incredible,' rather than 'detailed and specific.'" *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001), quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962); see also *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996). We have thus declined to remand for an evidentiary hearing where the facts underlying the petitioner's claim were undisputed and "beyond the pale." *Politte*, 852 F.2d at 931. On the other hand, we have instructed district courts to conduct an evidentiary hearing where a petitioner identifies ambiguities in the evidence that need to be resolved before reaching the merits, *Carnine v. United States*, 974 F.2d 924, 931–33 (7th Cir. 1992), and where a petitioner's sworn allegations indicated gaps in evidence that he would fill upon further discovery, *Ryan v. United States*, 657 F.3d 604, 606–07 (7th Cir. 2011) (remanding for hearing on when one-year statute of limitations for relief under § 2255 began to run).

Here, Santiago's assertions in his petition are not sufficient to justify a remand for an evidentiary hearing. He has not yet submitted a sworn assertion that he did not know at the time of the armed robberies and possessions of the firearm that he had any previous conviction for a crime punishable by more than one year in prison. His counsel on appeal say he is now prepared to do so, and we assume as much. We are also told by both sides that no transcripts are available from the guilty pleas or sentencing or parole revocation hearings on those prior convictions.

Accordingly, the only evidence Santiago proposes to present at the hearing is his own affidavit or testimony explaining that he is entitled to relief because he did not know he was a felon when he possessed the firearm. His uncorroborated denial of knowledge would not have to be accepted by every reasonable juror, so it would not prove actual innocence.

In the absence of any additional evidence, Santiago invites us to speculate about what might have happened. His counsel suggested at oral argument that perhaps the 23-month sentence he received was actually a series of as many as five consecutive sentences for less than one year each. Our dissenting colleague suggests that perhaps the transcripts might be found, and perhaps they might reveal some as-yet-unknown error. Post at 27.

Such speculation does not persuade us that an evidentiary hearing is needed. This case, like so many other § 2241 petitions, requires courts to balance interests in finality against accuracy. That balance has been struck in the form of the narrow procedural path and high substantive standards that we apply here for relief under § 2241. Relief is not available on the basis of speculation about what further investigation and

discovery might turn up. Santiago has not shown that he could actually offer other evidence similar to the transcripts to support his claim, or even that such evidence is available. Under these circumstances, we see no need to remand for an evidentiary hearing.

The district court's judgment denying Santiago's § 2241 petition is AFFIRMED.

WOOD, *Circuit Judge*, dissenting. Marcos Santiago stole a purse from his mother, some video-game cartridges from his sister, and a transistor radio from a parking-garage booth. He pleaded guilty to, among other things, two counts of criminal trespass. Because Pennsylvania law punishes criminal trespass with up to ten years in prison, 18 Pa. Cons. Stat. §§ 1103, 3503, that plea made him a felon for purposes of 18 U.S.C. § 922(g)(1), the statute that bars felons from possessing firearms. Yet in actuality, Santiago spent just over four months behind bars, all of it in pretrial detention. That put him in a quite rare class of persons: "felons" who had never served a single day after being sentenced.

A few years after he acquired that unusual status, Santiago and several others hatched a plan to stick up area hotels. They carried out three armed robberies, making off with around $3,000 before they were caught and arrested. Santiago was discovered to be carrying a gun, and so he was charged with, among other things, one count of violating section 922(g)(1). At trial in 2005, the government did not introduce any evidence establishing that Santiago knew, at the time he possessed the gun, that he had "been convicted in any court of [] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Nor did Santiago stipulate to such knowledge. The jury convicted him.

In 2019, the Supreme Court decided *Rehaif v. United States*, 139 S. Ct. 2191 (2019). *Rehaif* held that a person who possesses a firearm while having one of the nine statuses listed in 18 U.S.C. § 922(g) commits a crime only if she knows she has that status at the time of possession. *Id.* at 2194. Citing *Rehaif*, Santiago invokes 28 U.S.C. § 2241, the basic habeas corpus statute, to seek relief from his felon-in-possession conviction or, in the

alternative, an evidentiary hearing to explore his knowledge of his status when he possessed the firearm.

My colleagues conclude today that Santiago has not shown "a miscarriage of justice," and that nothing he might bring forth at an evidentiary hearing could ever meet that standard. I disagree. Santiago became a felon after committing a spate of petty thefts and did not spend a single day in prison after he was sentenced. Those facts leave me with grave doubt about whether Santiago knew, in the operative language of the statute, that he had been convicted of a crime "punishable by imprisonment for a term exceeding one year"—colloquially put, that he was a felon. If he lacked that knowledge, he is innocent of his section 922(g) conviction. An evidentiary hearing addressing what he knew and when he knew it is essential, if we are to give effect to the holding of *Rehaif*. I respectfully dissent from the majority's decision rejecting his petition.

## I

As the majority explains, Santiago's section 2241 petition must first pass a threshold requirement, found in 28 U.S.C. § 2255(e). Ordinarily, federal prisoners seeking collateral relief must proceed by filing a motion under 28 U.S.C. § 2255 in the court of conviction. But in some unusual circumstances, they may turn to the residual habeas corpus remedy found in section 2241. In order to do so, the prisoner must establish that "the remedy by [section 2255] motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e) ("the savings clause").

We have held that a prisoner who has never had "a reasonable opportunity to obtain a reliable judicial

determination of the fundamental legality of his conviction and sentence," and who cannot obtain such a determination through the section 2255 path, fits the bill. *In re Davenport*, 147 F.3d 605, 609, 611–12 (1998). Most often, that circumstance arises because of an odd drafting choice reflected in 28 U.S.C. § 2255(h). This provision allows a panel of a court of appeals to certify a "second or successive motion" in the event of (1) "newly discovered evidence" meeting certain criteria or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Note that section 2255(h)(2) does not authorize successive proceedings in the case of a new, retroactive rule of *statutory* law. *Davenport* interpreted the savings clause to bridge the gap, allowing a section 2241 petition when the alternative would be to leave a prisoner "imprisoned for a nonexistent offense." 147 F.3d at 611. This has been the law of this circuit ever since. See *Webster v. Daniels*, 784 F.3d 1123, 1135–39 (7th Cir. 2015) (*en banc*) (declining to overrule *Davenport*).

*Davenport* and its progeny set out the criteria that Santiago must satisfy to thread the savings-clause needle. 147 F.3d at 611–12. First, he must identify a change of statutory law "that has been made retroactive by the Supreme Court." *Id.* at 611. All agree that *Rehaif* effected such a change. Second, the change must be one that Santiago "could not have invoked … in his first section 2255 motion." *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012); see *Davenport*, 147 F.3d at 610. No disagreement there, either—*Rehaif* caught everyone by surprise.

Everything therefore hinges on a purported third requirement. The majority says that section 2255(e), as construed by *Davenport* and its progeny, also requires Santiago to show a "miscarriage of justice." See *Camacho v. English*, 872 F.3d 811,

813 (7th Cir. 2017). And the majority takes this to mean that Santiago has the burden of showing that "no reasonable juror would find beyond a reasonable doubt" that he knew, at the time he possessed a gun, that he had been convicted of a crime punishable by more than one year in prison. As I explain later, this standard is likely too demanding. For present purposes, however, I will assume that it applies. But we are not deciding the final merits of Santiago's claim, at which point that standard might come into force. We are considering instead only whether he has shown enough to earn a hearing. Section 2255 specifically addresses this point. It says that the court should (after giving notice to the U.S. Attorney) "grant a prompt hearing" on the motion, "[u]nless the motion and the files and records of the case *conclusively* show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b) (emphasis added). Santiago's petition easily clears that bar.

Consider, at the outset, what we already know. The misconduct that made Santiago a felon was remarkable only for its triviality. Santiago, at the time a drug user, approached his mother one evening to beg for money. She refused, but he grabbed her purse and fled. That same evening, he let himself into his sister's home and took a box of Super Nintendo cartridges—think *Legend of Zelda* or *Donkey Kong*. A bit later, he broke into an unattended parking-garage booth and took a radio. These acts were crimes, of course, but Santiago was hardly the Arsène Lupin of Lancaster County. Now, contrast Santiago's crimes with that of other defendants to whom this court has denied *Rehaif* relief. In *United States v. Hammond*, 996 F.3d 374, 396 (7th Cir. 2021), for instance, the defendant "had several prior felony convictions, including … armed robberies." Or take *United States v. Pulliam*, 973 F.3d 775, 782 (7th Cir. 2020), where the defendant's many prior convictions

included "escape of a felon from a penal institution."[1] Some criminal conduct is self-evidently felonious. Santiago's was not.

Santiago's criminal process back in 1999 was as unremarkable as his conduct. All five charges against him were resolved by plea after just one hearing; there was not even an arraignment. The docket indicates that three different judges handled the plea hearing and the two parole hearings, suggesting that the whole case may have been resolved by duty judges. And if any transcripts of the hearings ever were made, neither party has been able to find them. In short, Santiago's plea seems to have been as rote as criminal adjudication gets; the sort of brief, informal, in-and-out brush with justice that most often accompanies a misdemeanor or violation. See Alexandra Natapoff, *Criminal Municipal Courts*, 134 Harv. L. Rev. 964, 993–1005 (2021). Some criminal proceedings by themselves imply a felony. Once again, Santiago's did not.

Santiago's sentence is the most telling fact of all. As I mentioned before, Santiago served a little over four months in pretrial detention between his arrest and plea hearing. At the hearing, the first of the three judges to review Santiago's case

---

[1] See also *United States v. Nebinger*, 987 F.3d 734, 738–39 (7th Cir. 2021) (defendant had "six prior felony convictions"); *United States v. Maez*, 960 F.3d 949, 964(7th Cir. 2020) (first of three defendants had "spent most of his adult life in prison"); *id.* at 965–66 (second defendant had been charged with being a felon in possession of a firearm twice before); *id.* at 968 (third defendant had been *convicted* of being a felon in possession before); *United States v. Dowthard*, 948 F.3d 814, 818 (7th Cir. 2020) (defendant had been convicted of "four crimes serious enough to be potential predicates under the [Armed Career Criminal Act]"); *United States v. Williams*, 946 F.3d 968, 973–74 (7th Cir. 2020) (defendant had been convicted of first-degree murder).

sentenced him to "time served to 23 months." The judge then suspended the balance of the sentence and granted parole. About nine months later, after Santiago violated the terms of his parole, a different judge reinstated the sentence but then suspended it immediately and paroled Santiago a second time. Four months after that, following a second parole violation, a third judge repeated the process. The upshot, for our purposes, is that Santiago did not spend a day in prison serving his sentence, let alone more than a year. That fact, on its own, makes Santiago's petition something of a unicorn among this court's experiences with *Rehaif* claims. See, *e.g.*, *Dowthard*, 948 F.3d at 818 (defendant alleging *Rehaif* error had served more than a year in prison); *Pulliam*, 973 F.3d at 782 (ditto, but five years); *Williams*, 946 F.3d at 973–74 (twelve years). Some prison terms suggest a felony. Santiago's did not.

That leaves only what Santiago was told in court about his sentence. We do not know the details because nobody can find the transcript. But even if we assume that Santiago was apprised of the 23-month suspended sentence and understood what that meant, he would not necessarily have inferred that he had been convicted of "a crime punishable by imprisonment for a term exceeding one year." First, it is possible that Santiago interpreted the immediate suspension of the 23-month term as the erasure of that punishment. He does not have a J.D., and so might easily have misconstrued the technical term "suspension." Moreover, as his counsel pointed out at oral argument, a 23-month sentence for convictions on five separate charges does not, under Pennsylvania law, necessarily mean that a person was convicted of a section 922(g)(1)–qualifying offense. Pennsylvania judges have discretion to decide whether sentences will run consecutively or

concurrently. 42 Pa. Cons. Stat. § 9721(a); *Commonwealth v. Moury*, 2010 PA Super 46, ¶ 17. So, all that the length of Santiago's sentence necessarily suggested to him was that his five crimes, in the aggregate, were punishable by 23 months of consecutive incarceration—that is just 4.6 months per crime, substantially less than a year. The government had no response to this point at oral argument, and the majority also ignores it.

To sum up what we know: Santiago committed a spree of petty crimes, was given an ambiguous sentence after perfunctory proceedings, and never served a minute of that sentence post-conviction. Now, add to this some of what we might learn at an evidentiary hearing. Santiago would be able to testify about his state of mind when he possessed the gun, and the district court would be able to make a credibility finding. That, in itself, would be a significant addition to the record. See *Coleman v. Hardy*, 628 F.3d 314, 320–21 (7th Cir. 2010). And Santiago's testimony might be far from all. We might, for example, learn that there is a copy of a transcript filed away somewhere, and that transcript might shed light on the consecutive/concurrent question or other pertinent matters. We might learn that Santiago's plea hearing was in some way defective, undercutting the degree to which it put him on notice of his status. Or something else might come to light that supports either Santiago or the government.

The majority seems to suggest that Santiago needed to proffer any potential new evidence on appeal. I agree that this would be ideal. But the reality of habeas corpus litigation is typically far from ideal. Most petitions are filed *pro se*. Santiago's was no exception. On appeal, with diligent assistance from talented staff attorneys, we are sometimes able to

discern potentially meritorious petitions and to recruit *pro bono* counsel. Santiago's was one such petition. It is likely, in the circumstances, that nobody has had the opportunity to comb through the physical archives of the Lancaster County Court of Common Pleas. Santiago, for his part, has been in prison for seventeen years and counting. His counsel stepped into the case on appeal, inheriting the record as it stood. The majority's demanding show-your-cards approach ignores practical realities.

Together, these considerations lead me to dissent from the decision not to grant a hearing. I do, however, agree with the majority that Santiago has not yet shown quite enough to satisfy the savings-clause criteria under the "no reasonable juror" standard. But even under that high standard, he is close. And I do not share the majority's certainty that nothing that might come to light at a hearing could push his petition across the line.

Two other aspects of the majority's decision to deny a hearing require discussion. First, the majority points out that very few petitioners have won *Rehaif* relief on collateral review. True enough, but there is a first time for everything, and the cases it cites are easily distinguished. In *Colen v. Ortiz*, Civ. No. 19-15413 (KMW), 2022 WL 488943, at *5 (D.N.J. Feb. 17, 2022), after several drug-related arrests, the petitioner was sentenced "to a term of imprisonment of not less than 1 ½ years nor more than five years" on each charge. The petitioner in that case did "not dispute that he received those sentences, nor [did] he dispute that he served those sentences." *Id.* at *6. No *Rehaif* error there. In *United States v. McCreary*, No. 1:17-CR-5-TLS, 2021 WL 510952, at *1 (N.D. Ind. Feb. 11, 2021), the defendant received a ten-year sentence for battery. Other

sentences followed: two years in prison for domestic battery and strangulation; seven years for (more) battery, and so on. *Id.* That easily falls in the same category as the case just mentioned—one does not overlook a two-year stint in prison or a strangulation conviction. Much the same can be said about *Farrell v. Warden FCI Fairton*, Civ. No. 20-4414 (NLH), 2021 WL 5195664 (D.N.J. Nov. 8, 2021). There, Ferrell pleaded guilty in state court to a cocaine offense. He got a sentence of time-served (23 months) and was granted immediate parole. *Id.* at *3. But he was convicted later of using a firearm during the commission of a felony and of maiming. *Id.* He got five years on the maiming offense and three on the firearms offense. *Id.* Those are both easily long enough to support an inference of *Rehaif* knowledge. That leaves *Alexander v. Entzel*, No. 1:19-cv-1301, 2020 WL 1068060, at *1 (C.D. Ill. Mar. 5, 2020), a routine career-offender case, where the defendant stipulated that he had been convicted of a felony crime punishable by imprisonment for a term exceeding one year, but tried to avoid the sentencing consequences by attacking the underlying convictions and asserting that his rights had been restored. Nothing in that case indicated that the defendant was confused about the length of his sentence.

I would look not to these cases but to the growing body of appellate opinions in which courts on direct appeal have granted *Rehaif* relief under a plain-error standard. In *United States v. Black*, 845 F. App'x 42, 47 (2d Cir. 2021) (*per curiam*), for example, the Second Circuit vacated the conviction of a defendant whose section 922(g)(1) "predicate offense resulted only in a six-month term of imprisonment, not a year" and who did not have "a history of serious convictions." Along the same lines, in *United States v. Philippe*, 842 F. App'x 685, 689–90 (2d Cir. 2021) (*per curiam*), the court found a plain error

after the defendant raised a *Rehaif* challenge to jury instructions on appeal. The court emphasized two facts: that the defendant had "received only a sentence of time served" for his predicate offense, and that the record contained "no evidence" that he "was necessarily informed or aware of the fact that he had been convicted of a 'crime punishable by imprisonment for a term exceeding one year.'" *Id.* at 690. These cases granting relief are factually on all fours with Santiago's; the main point of distinction is the standard of review. But plain-error review is quite a demanding standard in its own right. The gap between an error that "seriously affects the fairness, integrity or public reputation of judicial proceedings" and a "miscarriage of justice" is not vast. These cases may not compel us to grant the petition, but they are far more pertinent than those cited by the majority.

The majority also makes much of Santiago's lack of an "innocent state of mind" at the time he possessed the firearm. This reasoning has a bit of intuitive purchase but falls apart under scrutiny. At best, it is a backward propensity argument: Santiago's course of conduct leading to the section 922(g) conviction included carrying a gun during bank robberies, and so (the majority postulates) he must have committed felonies in the past, too—or more precisely, he must have realized that the incidents for which he received a slap on the wrist in the past were serious enough to make him a felon. That reasoning would not pass muster under Rule 404, and it should not pass muster here. At worst, the majority's logic endorses punishing Santiago for the same conduct twice over. A federal criminal statute, 18 U.S.C. § 924(c)(1), prohibits possessing a firearm in furtherance of a crime of violence, precisely the conduct the majority seems to be thinking of when it talks about Santiago's state of mind. And Santiago will serve his time and

then some for that conduct: He was charged with two counts of violating section 924(c)(1), was convicted of the same, and received mandatory consecutive 5-year and 25-year sentences as a result.[2] My point is that crimes have elements, and *Rehaif* tells us that the *mens rea* element of a section 922(g)(1) felon-in-possession offense is knowledge that one has previously been convicted of a crime punishable by imprisonment for a term exceeding one year. Whether, beyond that, Santiago had an "innocent state of mind" is not pertinent.

## II

Thus far, I have assumed the accuracy of the majority's premise: that section 2255(e)'s savings clause is available only to a petitioner who shows a "miscarriage of justice," meaning "that more likely than not … no reasonable juror would find [him] guilty beyond a reasonable doubt." At least one of our published cases also has assumed as much. *Davis v. Cross*, 863 F.3d 962, 964 (7th Cir. 2017) (*per curiam*); see also *White v. Sproul*, No. 20-1222, 2021 WL 3520615, at *1 (7th Cir. April 8,

---

[2] Notably, had Santiago been sentenced for his section 924(c)(1) convictions under current law, he probably would be out of prison today. The First Step Act revised section 924(c)(1) to make clear that the mandatory consecutive 25-year term required by subsection (c)(1)(C) applies only to recidivists, which Santiago was not. Compare 18 U.S.C. § 924(c)(1)(C) (2021) ("In the case of a violation of this subsection that occurs *after a prior conviction under this subsection has become final*, the person shall be sentenced to a term of imprisonment of not less than 25 years") (emphasis added), with 18 U.S.C. § 924 (c)(1)(C) (2005) ("In the case of a *second or subsequent* conviction under this subsection…") (emphasis added); see also *Deal v. United States*, 508 U.S. 129, 132–34 (1993) (holding that the pre-revision language of section 924(c)(1) required stacking mandatory minimums even for "second or subsequent" offenses charged in the same case); *United States v. Davis*, 139 S. Ct. 2319, 2324 n.1 (2019) (recognizing that the First Step Act abrogated *Deal*).

2021). But my review of the Supreme Court's pertinent decisions convinces me that this standard may not apply to petitions in the procedural posture of Santiago's.

We are constantly reminded that the language of statutes matters, and so I begin there, with the language of section 2255. It permits second or successive motions in two circumstances: first, where there is new evidence, and second, where constitutional law has changed. See 28 U.S.C. §§ 2255(h)(1), (2). For cases qualifying under *Davenport*, we have held that the savings clause is available for fundamental statutory changes. It is notable that section 2255 uses a "miscarriage of justice" standard only in the "new evidence" cases brought under section 2255(h)(1), not in the change-in-law cases, brought under section 2255(h)(2). This is understandable, if we are asking how the new development would have affected a jury. It is, and should be, a difficult task to overturn a jury's verdict. But a question of law—especially one that determines whether a person has been imprisoned for a non-existent offense—calls on the skills of the judge, not the jury. It thus seems to me to be no accident that section 2255(h)(2) (and by extension, *Davenport*) do not use this standard. In a future case that squarely presents the question, we should, at a minimum, reconsider whether the cut-and-paste from section 2255(h)(1), reflected in both *Davis* and the majority opinion today, is correct.

The no-reasonable-juror standard is remarkably demanding; the obvious question is why. Answering this question requires a brief review of the Supreme Court's decisions setting out the procedural requirements for habeas corpus petitioners seeking to attack their *state*-law convictions. In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Court held that federal

habeas corpus relief generally is unavailable to a state pris-
oner if there is an adequate and independent ground of state
law supporting the conviction. It recognized two narrow ex-
ceptions: when "the prisoner can demonstrate cause for the
default and actual prejudice as a result of the alleged violation
of federal law, or demonstrate that failure to consider the
claims will result in *a fundamental miscarriage of justice*." *Id.* at
750 (emphasis added).

The no-reasonable-juror standard the majority invokes to-
day emerged from three cases fleshing out *Coleman*'s "funda-
mental miscarriage of justice" exception: *Sawyer v. Whitley*,
505 U.S. 333 (1992), *Schlup v. Delo*, 513 U.S. 299 (1995), and
*House v. Bell*, 547 U.S. 518 (2006). Both *Sawyer*, for innocence-
from-death claims, and *Schlup* and *House*, for actual-inno-
cence claims, understood *Coleman*'s "fundamental miscar-
riage of justice exception" to call for a no-reasonable-juror in-
quiry. *Sawyer* required a petitioner to show "by clear and con-
vincing evidence that, but for constitutional error … no rea-
sonable juror would have found him eligible for the death
penalty under [state] law." 505 U.S. at 350. *Schlup* required a
petitioner to show "that it is more likely than not that no rea-
sonable juror would have found [him] guilty beyond a rea-
sonable doubt." 413 U.S. at 327. All three cases dealt with the
function of the jury, not with questions of law that are the
court's responsibility to resolve.

With that history in mind, let us return to the matter at
hand. Does the no-reasonable-juror inquiry belong in our sec-
tion 2255(e) savings-clause jurisprudence? The majority cites
*House* and our decision in *Davis* to say that it does. I am not so
sure. *House*, like *Schlup* and *Sawyer* before it, grounded its rea-
soning in two interests: "comity and finality." 547 U.S. at 536;

see *Schlup*, 513 U.S. at 318; *Sawyer*, 505 U.S. at 338. Comity, in this connection, means the "respect that must be accorded to state-court judgments." *House*, 547 U.S. at 536. Such respect, in the criminal-law context, is a corollary of federalism, deriving from "the States' sovereign power to punish offenders." *Coleman*, 501 U.S. at 748 (cleaned up). Finality is important because there ought to be "a visible end to the litigable aspect of the criminal process." *Mackey v. United States*, 401 U.S. 667, 690 (1971) (Harlan, J., concurring in part).

The no-reasonable-juror standard applied in *Sawyer*, *Schlup*, and *House* sprang from these concerns. As *Schlup* explained, "the fundamental miscarriage of justice exception seeks to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." 513 U.S. at 324. And the no-reasonable-juror inquiry is the "specific rule" the Supreme Court has adopted to implement that balance. *House*, 547 U.S. at 537. The standard is high because the interests are great; in the Court's view, allowing a petitioner to challenge a state-law conviction despite a procedural default threatens the foundations of federalism. Thus, only near-certainty that a petitioner is innocent will do.

By now, the problem in cases such as Santiago's should be apparent. He faces no comity issue, because he is a federal prisoner, seeking federal-court relief from a federal conviction. Finality remains relevant, but that interest can be overridden if someone is in prison for conduct that the law does not punish. See, *e.g.*, *Bousley v. United States*, 523 U.S. 614, 620–

21 (1998).[3] In particular, the Supreme Court has made clear that finality interests "are at their weakest" when a petitioner's theory is *legal* innocence. *Welch v. United States*, 578 U.S. 120, 131 (2016). Legal innocence is the claim that the defendant was "convicted under a statute that, properly interpreted, did not reach her conduct." Leah M. Litman, *Legal Innocence and Federal Habeas*, 104 Va. L. Rev. 417, 437 (2018). The sound principle is that "there is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose." *Welch*, 578 U.S. at 131 (quoting *Mackey*, 401 U.S. at 693 (Harlan, J., concurring in part)) (cleaned up). And *Rehaif* claims like Santiago's are legal-innocence claims.

What, then, is the proper standard for federal legal-innocence claims, which implicate no comity interest and a reduced finality interest? We could do worse than look to *Brecht v. Abrahamson*, 507 U.S. 619 (1993), which calls for a showing of a substantial and injurious effect or influence before habeas corpus relief is available. A petitioner should be able to proceed with her section 2241 petition, by way of the savings clause, if and only if she can show three things: (1) a new, retroactive rule of statutory law; (2) no prior, adequate opportunity to raise the claim; and (3) that reliance on the old understanding of the statutory law had a "substantial and injurious effect or influence" in determining the outcome of the case. See *id.* at 638. Such a standard would allow us to resolve

---

[3] The majority points out that *Bousley* applied the no-reasonable-juror standard to a federal statutory-innocence claim brought under section 2255. True enough. But it did so without much reflection, simply plucking the standard wholesale from *Schlup*, 523 U.S. at 623, and did so in the course of *granting* the petitioner just the sort of relief Santiago is seeking here, *id.* at 624. So it can hardly be said to have settled the matter.

the claims of those who can make a substantial showing of legal innocence. It would not close that door to all except those who can prevail on the papers.

I need not pursue this further, because I am persuaded that even under the more stringent standard, Santiago has a right to a hearing. But we should take care in future cases to pay heed to the context in which these standards have developed, and to apply the correct ones.[4]

### III

In closing, I add a word about *Rehaif*'s broader significance. Section 922(g) prosecutions occupy a considerable share of federal criminal dockets. In fiscal year 2020, for example, over 10% of all federal criminal cases reported to the U.S. Sentencing Commission involved a section 922(g) conviction—meaning that there were nearly 7,000 such convictions in total. United States Sentencing Commission, Quick Facts: Felon in Possession of a Firearm (2020). At the time of this writing, over 30,000 of the roughly 143,000 people in federal custody are serving sentences resulting, at least in part, from a weapons conviction. Federal Bureau of Prisons, *Inmate*

---

[4] Clarity about these points may be forthcoming sooner rather than later. While this appeal was pending, the Supreme Court granted *certiorari* to review the Eighth Circuit's decision in *Jones v. Hendrix*, 8 F.4th 683 (8th Cir. 2021), *certiorari* granted, No. 21-857 (U.S. May 16, 2022). The question presented is whether "federal inmates who did not—because established circuit precedent stood firmly against them—challenge their convictions on the ground that the statute of conviction did not criminalize their activity may apply for habeas relief under § 2241 after this Court later makes clear in a retroactively applicable decision that the circuit precedent was wrong and that they are legally innocent of the crime of conviction." In answering that question, the Supreme Court may also have occasion to address the matter of the appropriate standard for savings-clause claims.

*Statistics: Offenses*, https://www.bop.gov/about/statistics/statistics_inmate_offenses.jsp (last updated May 28, 2022). Section 922(g) is by far the most common statute of conviction for inmates in that category—in a typical year, it is the lead charge in two-thirds of federal weapons convictions. See TracReports, *Federal Weapons Prosecutions Continue to Climb in 2019* (June 5, 2019), https://trac.syr.edu/tracreports/crim/560/ (reporting that a section 922(g)(1) charge was the lead charge in over 67% of weapons matters prosecuted in FY 2019); *cf. Rehaif*, 139 S. Ct. at 2201 (Alito, J., dissenting) ("And § 922(g) is no minor provision. It probably does more to combat gun violence than any other federal law.").

Against this backdrop, *Rehaif* surprised many observers. By 2019, the Federal Reporter was full of cases construing every detail of section 922(g). Yet before *Rehaif*, no court of appeals had held that section 922(g)'s knowledge element applied to status. *Rehaif*, 139 S. Ct. at 2201 (Alito, J., dissenting). We had held the opposite. *United States v. Lane*, 267 F.3d 715, 720 (7th Cir. 2001). So had nine other circuits. See *Rehaif*, 139 S. Ct. at 2210 n.6 (Alito, J., dissenting) (collecting cases).

Put those two pieces of the picture together, and the stark consequences of today's decision start to come into view. We know that tens of thousands of Americans are presently behind bars for having violated section 922(g)(1). We know that, until *Rehaif*, few had any reason to contest their knowledge of their felon status at the time of possession. We know that any current prisoner who was convicted without the requisite knowledge of her status is being punished for a nonexistent crime. And we know that *Rehaif* already has changed the outcome of a small, but important, set of direct appeals.

It would be extraordinary if *Rehaif* turned out to be a dead letter for any prisoner whose conviction was final on the day it came down. Yet that is where the majority's approach to this case may leave things. If Santiago—who never served a day in prison after his summary convictions, and may genuinely have been unaware that he had formerly been convicted of a single crime punishable by imprisonment for more than a year—cannot even get a hearing, I struggle to see who might.

I respectfully dissent.